## DRURY GEE V. M. E. SCOTT.

1. HUSBAND AND WIFE INCOMPETENT AS WITNESSES FOR OR AGAINST EACH OTHER.—The act of May 10, 1871, (Paschal's Dig., 6826,) removing the disabilities of parties as witnesses, does not render the husband and wife competent as witnesses for or against each other—the exclusion of such testimony being on grounds of public policy, not alone of interest.

2. STATUTE CONSTRUED.—Act of May 10, 1871, (Paschal's Dig., 6828,) held not to extend to the admission of the testimony of the husband or wife in behalf of the other, who is party interested in the issue.

APPEAL from Burleson. Tried below before the Hon. A. S. Broaddus.

November 8, 1871, Drury Gee recovered a judgment, in the District Court of Washington county, against T. L. Scott, the husband of M. E. Scott, for $593, and costs. Execution was issued thereon 18th of March, 1873, and levied in Burleson county on a stock of goods. May 21, 1873, T. L. Scott, as agent for his wife, filed an affidavit and bond, for trial of the right of property in said goods. On a trial, had April 22, 1874, among the witnesses offered by claimant was her husband, T. L. Scott, which evidence was admitted over objections. Verdict and judgment for the claimant, and Gee appealed.

*Breedlove & Ewing* and *A. W. McIver*, for appellant, cited 1 Greenl., secs. 334, 336, 337, 340; Pedley v. Wellesley, 3 C. & P., 558; 2 Kent's Comm., 178, 179; McDuffie v. Greenway, 24 Tex., 625; Bunt v. Baker, Smith's Lead. Cas., 105; Manchester v. Manchester, 24 Vt., 649; Pillow v. Bushnell, 5 Barb., 156; Erwin v. Smaller, 2 Sandford, 340; Stapleton v. Croft, 10 Eng. L. and Eq., 455; Alcock v. Alcock, 12 Eng. L. and Eq., 354; Lucas v. Brooks, 18 Wall., 452.

*Sayles & Bassett*, for appellee.—The first error propounded by counsel for appellant, in their brief, is as to the admissi-

bility of the evidence of T. L. Scott. But, in this case, it is unnecessary to discuss or decide the question whether a husband is a competent witness on behalf of his wife to prove a fact which is personally known to him, and where his knowledge is not derived from the confidential relations existing between husband and wife. The rule disqualifying husband and wife as witnesses for or against each other, is intended to protect the confidential communications existing between them, and is, as aptly said by appellant's counsel, analogous to the rule which forbids the disclosure of confidential communications from the client to his attorney. But it is well settled, that this rule does not prohibit an attorney from testifying as to facts known to him otherwise than from the confidential communication of his client. (1 Greenl. Ev., 239, 240; Flack v. Neill, 26 Tex., 273.)

T. L. Scott, in the management of the business of his wife, had a knowledge of facts possibly not known to her; at any rate, the facts about which he deposed were within his own knowledge, and it is difficult to see how his testifying in her behalf, and at her instance, can tend to "destroy the family, and rob domestic life of all that renders it attractive and desirable."

But, in the case at bar, T. L. Scott is a party to the suit. Upon a judgment and execution against himself, the separate property of his wife was seized. He, as the agent of his wife, made affidavit that the property seized was the separate property of his wife, and therefore not liable for the payment of a judgment against himself.

During the marriage, he had the sole management of his wife's separate property, (Paschal's Dig., 4641,) and is authorized to sue, either alone or jointly with her, for its recovery. She could not have sued alone, unless he had failed or neglected so to do. (Paschal's Dig., 4636.)

It was his duty to protect his wife's property from sacrifice for his personal debts; and in order to do this, it was necessary for him to show by what right it was in his possession.

He makes the claimant's affidavit, showing that he held the property in right of his wife, and as her agent. He also signs the claimant's bond, the signature of his wife's name, by himself as agent, neither adding to nor detracting from its obligation. In cases of this character, where no formal pleadings are required, (Reynolds *v.* Lansford, 16 Tex., 286,) the court will look to the rights of the parties as disclosed by the record, and technical objections as to the manner of prosecuting the claims will be disregarded. Nor could the real character of the suit, or the status of the parties, be affected by the mere act of the clerk in docketing the cause as if the wife had sued alone, when it is apparent to the court that the husband was the proper party.

In Merriam *v.* Hartford and New Haven Railroad Company, 20 Conn., 362, under the statute of Connecticut, (1848,) removing the restriction on the ground of interest, the wife of the plaintiff was held to be a competent witness, when called by the husband. The court, referring to the language of text-writers, placing the exclusion both on the ground of interest and of public policy, to prevent dissensions in the family, the first objection being removed by the statute, say that the latter could only apply if she were compelled to testify against the husband, and can have no application when called by him to testify in his favor.

In Massachusetts, the plaintiff's wife was held competent to prove the entries made in her husband's book of accounts. (Littlefield *v.* Rice, 10 Metc., 287.)

So in Vermont. (Andrus *v.* Foster, 17 Vt., 556; Gay *v.* Rogers, 18 Vt., 342.)

In Pedley *v.* Wellesley, 3 C. & P., 558, a party having married his adversary's witness pending the suit, and after she had been subpœnaed, Best, C. J., held that she would be competent as a witness for the other party, with her husband's consent, but not without it. (See, further, Bishop on Marriage and Divorce, 2d vol., sec. 723.)

In regard to the question of the earnings of a mercantile

business carried on by the wife, with a stock of goods bought with her separate funds, the tendency of modern decisions is very decidedly in favor of recognizing the right of a married woman to engage in commerce in her own name, and to hold and trade with the proceeds, exempt from seizure for the husband's debts. (Wieman v. Anderson, 42 Penn., 311; Maunderbach v. Mock, 29 Penn., 43; Tillman v. Shackleton, 15 Mich., 447; Glover v. Alcott, 11 Mich., 471; Todd v. Lee, 16 Wis., 480; Partridge v. Stocker, 36 Vt., 108; Richardson v. Merrill, 32 Vt., 27; Maghee v. Baker, 15 Ind., 254; Green v. Pallas, 1 Beasl., (N. J.,) 267; Wilthaus v. Ludecus, 5 Rich., (S. C.,) 326. See Schouler on Domestic Relations, 245–247.)

MOORE, ASSOCIATE JUSTICE.—The material question presented for our consideration in this case, is whether, since the enactment of the statute of May 19, 1871, declaring that in the courts of this State there shall be no exclusion of any witness in civil actions because he or she may be a party to, or interested in, the issue to be tried, the husband or wife of one of the parties is disqualified from testifying, on behalf of such party, as to matters of which the witness can speak from general knowledge, as contradistinguished from facts or information derived from confidential intercourse during the marital relation.

Unquestionably, by the common law, neither the husband nor wife could testify for or against the other, or in a suit to which the other was a party, or had a direct or immediate interest, except in a few exceptional cases, in which their testimony is held admissible on the ground of necessity. As, for example, in prosecutions for violence committed by the husband upon the wife; or in an action by the husband against a carrier for the contents of a lost trunk; or to prove the original entries of an account, where the wife kept the husband's books, &c.

To determine the effect of the statute referred to on the

common-law rule, that neither the husband nor wife could testify for or against the other, it is necessary to ascertain upon what ground the rule is based, and why they were held incompetent. For, evidently, if they were excluded solely upon the ground of interest resulting from the personal unity of husband and wife, as the statute declares in plain and positive terms that interest shall be no ground for the exclusion of any witness, the common-law rule is abrogated, and they cannot be excluded from testifying. If, on the other hand, there is some other ground upon which, by the common law, the husband and wife are held to be incompetent to testify, as to matters of general knowledge, for or against the other, the statute does not reach or repeal it, and the courts must still enforce the common-law rule, until still further modified by the Legislature.

Was interest, then, the sole ground for the exclusion at common law of the husband and wife as witnesses, in cases to which the other was a party or had an interest? Unquestionably it is not, when the proposed evidence of the husband or wife relates to, or touches upon, matters of confidential intercourse during the marital relations. Testimony of this character, beyond doubt, is inadmissible at common law, upon the ground of public policy, aside from all consideration of identity of interest of the husband and wife in the issue tried, or of the fact that one of them is a party to the record. And hence it is universally held, whenever the question has been presented, that matters of this character cannot be testified to by the husband or wife, notwithstanding the fact that the common-law rule, that interest disqualifies a witness, has been abrogated. But it is maintained, by those who insist upon the admissibility of the husband and wife to testify in respect to matters of their general knowledge, that while the husband and wife are precluded from testifying against each other by the common law, upon grounds of public policy, the only ground upon which their testimony in favor of each other was excluded, was that of mutuality or identity of interest.

And certainly the language of some of the text-books on the law of evidence, of the highest authority, seems to support this conclusion.

Thus says Starkie: "The husband and wife cannot be witnesses for each other, for their interest is identical; nor against each other, on grounds of public policy." (2 Stark. Ev., 706.) And in Buller, N. P., 286, it is stated, "That husband and wife cannot be admitted to be witnesses for each other, because their interest is absolutely the same; nor against each other, because contrary to the legal policy of marriage." (See, also, 1 Phill. Ev., 76.) And the courts of some of the States having analogous statutes to ours, entertaining this view of the common law, have held the husband and wife rendered by the statute competent to testify for, if not against, each other. (Merriam v. Hartford and New Haven R. R. Co., 20 Conn., 354.)

But elementary writers of equal authority, and probably the larger number of well-considered cases, put the common-law rule, excluding the testimony of husband and wife in favor of as well as against the other, upon the broader and, as it seems to us, more satisfactory ground of public policy, as well as interest. Says Mr. Greenleaf: "This exclusion is founded partly on the identity of their legal rights and interest, and partly on principles of public policy, which lie at the basis of civil society." (1 Greenl. Ev., sec. 334.) And says Judge Kent: "The husband and wife cannot be witnesses for or against each other. This is a settled principle of law, and is founded as well on the interest of the parties being the same as on public policy." In the case of Davis v. Dinwoody, 4 T. R., 678, when the remarks quoted from Buller's Nisi-Prius were relied upon to support the competency of the witness, Lord Kenyon said: "Independently of the question of interest, husbands and wives are not admitted as witnesses for or against each other. From their being so nearly connected, they are supposed to have such a bias upon their minds that they are not to be permitted to give evidence

either for or against each other." And Buller, J., adds: " It is now considered as a settled principle, that husband and wife cannot, in any case, be admitted as witnesses for or against each other."

Many other cases might be easily cited, in which it is decided that such testimony is inadmissible at common law, upon the ground of public policy, as well as because of interest; and this principle has been frequently applied by the courts of other States having statutes similar to ours, as will be seen in the following cases, in which it is held that the common-law rule is still in force, and that husband and wife cannot testify the one for the other, notwithstanding their mutuality of interest is no longer a ground for their exclusion: Cram *v.* Cram, 33 Vt., 15; Mitchinson *v.* Cross, 58 Ill., 366; Dunlap *v.* Hearn, 37 Miss., 471; (overruling Lockhart *v.* Luker, 36 Miss., 68;) Lucas *v.* Brooks, 18 Wall., 436; Kelley *v.* Proctor, 41 N. H., 139; Breed *v.* Gove, Id., 452; Hasbrouck *v.* Vandervoort, 5 Seld., 153; Alcock *v.* Alcock, 12 Eng. L. and Eq., 354; Stapleton *v.* Crofts, 18 Ad. & Ellis, N. S., 367; 16 Jur. Rep., 408.

It may be, the reasons which led to the enactment of the statute modifying the common-law rule, that parties to the record or interested in the issue to be tried are incompetent to testify, are just as applicable to the one ground for the exclusion of such testimony as the other. But if so, this is a matter that addresses itself to the Legislature, and not to the judiciary. Until such change is made by the proper department of the government having the power to do this, it is our duty to declare and administer the law as it has been " from the time whereof the memory of man runneth not to the contrary." To do so, we must hold that the court erred in admitting the husband of appellee to testify as a witness in the case. And for this error, the judgment must be reversed.

There are other interesting and important questions presented in the record; but as they may not arise upon another trial, and have not been presented by counsel so as to aid

the court in reaching a proper conclusion upon them, we do not feel called upon to undertake their investigation and determination at this time. As a general rule, we are not inclined, and do not regard it as our duty, while there is so much more business pressing upon us than we can possibly dispose of, to take the time to investigate questions, unless absolutely essential for the disposal of cases, when not aided, by an examination and reference to the decisions bearing upon them, by counsel.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.