F. M. CAIRRELL ET AL. v. J. D. HIGGS ET AL.

(Case No. 865.)

1. DEED — SUBSCRIBING WITNESSES — AFFIDAVIT OF FORGERY — SECONDARY EVIDENCE. — When a deed is offered in evidence, the effect of an affidavit of forgery is to put the party claiming under it upon proof of its due execution, which must be by the production of the subscribing witnesses or one of them, if living, or if dead, incompetent to testify, or cannot be procured, then by proof of their handwriting. Proof of handwriting may be made by one who has seen the party write, or, having received letters from him purporting to be in his handwriting, has afterwards communicated with him personally respecting them. 1 Greenleaf, 762–769.

2. HUSBAND AND WIFE — SUBSCRIBING WITNESS. — The husband is incompetent to be a subscribing witness to a deed in favor of his wife.

3. DEED — SUBSCRIBING WITNESS. — Where one of the subscribing witnesses to a deed is incompetent to be a subscribing witness, and incompetent to testify, its execution may be established by proof of the handwriting of the other subscribing witness, he being dead.

4. REGISTRATION — DEED — PROOF OF EXECUTION. — The requirements of the law concerning the proof of a deed for registration have no application or reference to the proof necessary upon offering it in evidence on the trial of a cause.

5. HUSBAND AND WIFE — COMPETENCY. — Husband and wife are not incompetent to testify for themselves and in the protection of their own interests.

6. PRACTICE — INCOMPETENT EVIDENCE. — Where the case is tried by the judge without a jury, his having heard incompetent evidence will not require a reversal of the judgment, if there was competent evidence sufficient to authorize its rendition. Millican v. Millican, 24 Tex., 453; Beaty v. Whitaker, 23 Tex., 529; Melton v. Cobb, 21 Tex., 543.

APPEAL from Rusk. Tried below before the Hon. A. J. Booty.

The appellants brought suit against the appellee J. D. Higgs for the recovery of a tract of four hundred acres of land, and for the rents and use and occupation of the same, alleged in an amended petition to be $1,000. The defendant J. D. Higgs answered, pleading not guilty, and alleging that James E. Higgs (the father of plaintiff Francess, under whom plaintiff and defendants both claim), on 7th May, 1858, sold and conveyed the land to M. L. Higgs, the defendant's wife, by deed of that date, which he files, and that said M. L. Higgs is the owner of the land, and that he is only interested in the land as her husband to control and manage it for her.

Then the plaintiffs made Mrs. Higgs a party defendant repeating the allegations of their original petition against her with her husband, and by an amended petition alleged that the deed under which defendants claim is a forgery; that Higgs was the tenant of James E. Higgs, and that defendants occupied the land as tenants, and claim rent, etc.

Mrs. Higgs filed a general denial.

By an amended answer defendants set up the defense of limitation, and claim compensation for improvements made in good faith to the value of $3,500.

The case was tried by the judge, the parties waiving a jury.

Upon the trial Mrs. Cairrell interposed her affidavit in proper form of the forgery of the deed filed from James E. Higgs to M. L. Higgs. It was agreed that plaintiff and defendant claimed title from the same source, James E. Higgs.

The court permitted defendant Jere Higgs, whose name appears as one of the subscribing witnesses to the deed, to make affidavit that Richard B. Kelly, also a subscribing witness, was dead, to which the plaintiff excepted.

Defendants then proved by Lawson that he knew Kelly well; had known him for several years; had seen him write but once, but that he had received several letters from him which he acknowledged that he had written to him, and "that he believed the signature of Kelly to the deed to be his, but would not swear positively that it was."

Defendants also introduced Johnson, who testified that he knew Kelly, had seen him write, and believed the signature to the deed to be his handwriting.

Both witnesses, Lawson and Johnson, testified that Kelly died in Rusk county in 1867 or 1868.

The court upon this proof permitted the deed to be read.

Plaintiffs introduced the testimony of Mrs. Prudence Ramsey, the plaintiff's mother. She testified she had been the wife of James E. Higgs; was married to him in 1854, and that he died about 1st August, 1858; that Francess Cairrell was his daughter, born in 1855; that one other child of the marriage was about one year old when James E. Higgs died, and that child died at eighteen months old. That at the death of James E. Higgs, J. D. Higgs was living on the land in Rusk county; that "J. D. Higgs lived on the land to keep J. E. Higgs' creditors from taking of it, he being in debt. He went into possession of the land as a tenant of James E. Higgs; never heard of any one claiming the land but her husband; said her husband, during his life-time, received rent for the land every year; did not know how much nor how many years; that since his death she had received rent for the land in controversy for the years 1857 and 1858, through her agent or attorney; near $70 these two years."

She further testified that her husband died in Bossier Parish, in the northern part of Louisiana, in 1858; "that he was at home all the time for six months next preceding his death; had not visited his brother, J. D. Higgs, within

or during the year, nor did J. D. Higgs visit James E. Higgs within six months next before his death; that all she knew as to where her husband was for six months next before his death is that he was farming that year; had hands employed; . . . that he was, during the six months referred to, busy at his farm. She said the land belonged to James E. Higgs, and now belongs to Francess Cairrell."

This is the material part of Mrs. Ramsey's testimony, and it is all that was offered against the deed, except what may be considered as arising from an inspection of the deed itself, which was sent up with the record, as the statement of facts says, "for our inspection, to see that one man signed the name of both the Higgses."

Defendants then introduced Johnson, who, in addition to what has been stated as his testimony, said that, between the 5th and 10th of May, 1858, J. D. Higgs and James E. Higgs came to his house with a negro boy, which James Higgs offered to sell to him, stating that he had sold his land to J. D. Higgs, and wanting to sell him the negro, so as to get rid of his interest in Texas. Witness could not tell how he recollected that it was between the 5th and 10th of May, 1858, only that he had a blacksmith shop. He kept books, but could not refer to any items of charge made on that day or in that month, but said he just knew the facts. This witness also stated that he was well acquainted with James E. Higgs before he went to Louisiana; that he, witness, lived about two or three miles from J. D. Higgs in 1858, when the brothers came to his house to sell the negro; that James Higgs at that time said he would take $50 less than the worth of the negro, because he had sold out all his interest in Texas except the negro. Witness said he knew the witness to the deed, Kelly, well, as he had been his overseer for several years, and kept his books; had seen him write often, and knew his handwriting, and was satisfied it was his signature to the deed.

The court then permitted the defendant, J. D. Higgs, over the objection of plaintiff, to testify as follows: "That they had been living on the land about thirty years; had

made valuable improvements, worth $3,000; . . . that he had never paid Mrs. Ramsey, or any one else for her, any rent for the year 1857 or 1858; that his brother, James E. Higgs, was at his house on or about 7th May, 1858."

The court also permitted, over the objections of plaintiff, the following portions of the testimony of Mrs. M. L. Higgs, taken in answer to interrogatory, to be read: "She saw James E. Higgs the last time at her house in Rusk county, about the 7th May, 1858, when her husband, J. D. Higgs, bought the land in controversy and paid him for it $500. The deed was made to me; I delivered the deed to my husband, J. D. Higgs, to have recorded after the suit was instituted. . . . My husband and self and family reside on the land.. We have had peaceable, uninterrupted possession for nineteen years under the deed, and have been living upon it, in all, about thirty years."

The court rendered judgment for the defendants, and the plaintiffs filed a motion for a new trial, which being over-ruled, they appealed.

The assignments of error relied on in the appellants' brief are:

1. In overruling the motion for new trial.
2. In permitting Higgs and wife to testify.
3. In allowing Johnson and Lawson to testify.
4. In admitting the deed.

These several assignments are intended to raise the question of the sufficiency of the proof of the deed from James to Mrs. Higgs, and as to the admissibility of the testimony of Mr. J. D. and Mrs. Higgs in this suit.

*N. G. Bagley*, for appellants.

*James H. Jones*, for appellees.

QUINAN, J.— 1. As to the proof of the execution of the deed. The effect of the affidavit of Mr. Cairrell, that the deed was a forgery, was simply to put the defendants upon proof of its due execution. That proof must be made by

the production of the subscribing witnesses, or one of them, if any, if he be living, but if the subscribing witnesses be dead or incompetent to testify, or cannot be procured, and in other like cases, then secondary evidence of its execution is admissible, and this proof is made by proving the handwriting of the subscribing witnesses. Mr. Greenleaf says there are two modes of acquiring knowledge of the handwriting of another, either of which is universally admitted to be sufficient to enable a witness to testify to its genuineness. The first is from having seen him write. It is held sufficient for his purpose that the witness has seen him write but once, and that only his name. The second mode is from having seen letters purporting to be the handwriting of the party, and having afterwards personally communicated with him respecting them, etc. 1 Greenleaf, 769, 762.

Where the secondary evidence is offered because of the death of the witness, proof, of course, must be made of the identity of the witness and of his death. Now in this case, although J. D. Higgs was permitted to prove the death of the witness Bailey, and this was irregular, yet his death was proven by the witnesses Johnson and Lawson, and their testimony to the due execution of the deed was a full compliance with the rule laid down, and in our opinion entitled the defendants to read it in evidence. It is true that J. D. Higgs appears as a subscribing witness to the deed, but he was incompetent to be a witness to its execution, incompetent to testify to its execution, and he was on that ground objected to by plaintiff. It is objected, also, that the proof adduced was not sufficient, as not in conformity to the rules prescribed for the registration of deeds. But it is to be observed that those rules assume to regulate only what shall be required to entitle a deed to be recorded, and have no reference to the proof necessary upon the introduction of a deed upon a trial in open court. They are properly more rigid, because the proceeding is *ex parte*, and the witnesses testifying are not subjected to a cross-examination.

The deed then being in our opinion properly admitted in

evidence, the only evidence adduced to establish its invalidity was that of Mrs. Ramsey, the plaintiff's mother. And weighing it carefully, we can find in it nothing in our judgment to overbalance the due proof of the execution of the deed. It is true, she says she received rent for the land for 1857 and 1858, through her agent or attorney, but that is not inconsistent with the fact that the deed was executed in May, 1858. There is no pretense that until 7th May, 1858, Mr. Higgs was the owner of the land. The most material fact to which she testifies is that her husband was at home for six months before his death, had not visited his brother that year, nor his brother visited him; that all she knew as to where her husband was for six months next before his death is that he was farming that year, had hands employed, and was busy at his farm. But we are left to speculate whether the farm and the home were at the same place; whether she herself might not have been absent during a brief portion of the time; whether Bossier Parish and Rusk are near or remote, and whether a trip might not have been made during the time from one to the other by James Higgs without leaving an impression upon her memory. Upon this point we think, however, the testimony of Mrs. Higgs, of J. D. Higgs and of the witness Johnson is entitled to greater weight. Higgs and wife both swear to the presence of James Higgs in Rusk county about the 7th May, 1858; Mrs. Higgs giving the incidents then of his execution of the deed, the payment to him of the money, and the delivery of the deed to her, and Johnson testifying to the fact of the offer to sell him the negro boy, his declaration that he had sold out his property in Texas, and other facts to identify the time and place.

There is another portion of Mrs. Ramsey's testimony which, in our opinion, tends to prove the execution of the deed. She says that "J. D. Higgs lived on the land to keep James Higgs' creditors from taking it." Now, it would occur to a very simple-minded person that merely living on the land as James Higgs' tenant would be a very ineffectual way of protecting it from his creditors, but that if such

were the purpose, a conveyance of the land would offer better chances of effecting it, and would most probably be resorted to. In connection with Mrs. Ramsey's testimony, we may observe that it is not a little singular that if James Higgs had made no conveyance of this land that she, although the proof shows she was the owner of five-eighths of it, made no claim for it, or for the rents of it, from 1858 to the present time, so far as this record discloses.

The deed is sent up for our inspection that we may "see that one man signed the name of both the Higgses." In relation to this it is sufficient to observe that we have no proof before us as to who wrote the body of the deed; that we cannot say, from an inspection of it, whether James or Jere wrote it; and that if it were shown that in fact James wrote "Jeremiah D. Higgs" to it, as the name of the subscribing witness, that would not invalidate the deed. Ragsdale v. Robinson, 48 Tex., 379.

But it is assigned for error that the court erred in permitting Mr. and Mrs. Higgs to testify, and we are referred to the case of Gee v. Scott, 48 Tex., 515, in support of this assignment. After a very careful consideration of the judgment of the court in that case, we are strongly inclined to the opinion that it does not support this assignment. The sole question decided in that case is that husband and wife cannot be witnesses for or against each other, and this only upon the ground of public policy; and the opinion does not say, nor do we think it is fairly deducible from the language of the court, that husband and wife are incompetent to testify for themselves and in the protection of their own interests. We are unable to perceive how to permit them so to do would be violative of that policy which has been invoked. Mr. Greenleaf thus states the grounds of that public policy: "It is essential to the happiness of social life that the confidence subsisting between husband and wife shall be sacredly protected and cherished in its most limited extent, and to break down or impair the great principles which protect the sanctity of that relation would be to destroy the best solace of human exist-

ence." Now, doubtless, to permit husband and wife to testify for or against each other without restriction, to permit them to testify to communications made, or conversations had, or information acquired in the intimacy of connubial intercourse, would be subversive of this policy. And it may be that the bias of affection is more potent than the bias of self-interest to pervert the truth.

But it will be seen from the statement of the testimony of Mr. and Mrs. Higgs, which we have given, that they were each restricted by the judge to proof of such facts as were peculiarly applicable to their separate defenses. Mr. Higgs stated such only as tended to relieve him of the claim made upon him for rents and damages, and Mrs. Higgs testified to those only which were necessary to support her title. Neither testified to communications made by the other, nor for the other, except incidentally. It is difficult for us to perceive how permitting them to so testify would break down or impair the great principles which protect the sanctity of the domestic relation, or destroy the best solace of human existence. But it is not difficult to see that to deprive them of the right extended to every other litigant, to testify for himself, would be a very effective means for the destruction of their rights of person and property.

But however that may be, we think that without resorting to the testimony of Mr. and Mrs. Higgs, and excluding that altogether from consideration, the judgment is well supported by the testimony of the witnesses adduced who were competent and unimpeached. If we admit, therefore, that Mr. and Mrs. Higgs were improperly permitted to testify, it does not follow that the judgment must be reversed.

In Millican v. Millican, 24 Tex., 453, it is said: "Where a case has been decided by the court without a jury, it is not a ground for reversing a judgment, that the court may have heard evidence which was not legally admissible, if it has no influence on the result, and the case was rightly decided upon evidence which was competent and sufficient."

In Beaty v. Whitaker, 23 Tex., 529, it is said: "The case was submitted to the decision of the court, and the

judgment having been rightly rendered upon evidence which was legal and proper, though the judge may have heard evidence which was not competent, as it can have no influence upon the judgment, it is not a ground of reversal."

And in Melton v. Cobb, 21 Tex., 543, the court say: "As the judge sat to hear and decide the cause without a jury, his having heard incompetent evidence, if such was the case, would not require a reversal of the judgment where there was competent evidence sufficient to authorize its rendition. The court would discriminate between evidence which was legal and which was not, giving the former the weight to which it was entitled, and rejecting the latter."

We conclude, then, that by the testimony of Lawson and Johnson, the execution of the deed from Higgs to Higgs was well proven, and that there is no error in this judgment which requires its reversal, and that it be affirmed.

AFFIRMED.

[Opinion delivered November 26, 1879.]