## T. J. NEWMAN v. AMANDA FARQUHAR.

### (Case No. 1605.)

1. HOMESTEAD — FACT CASE. — See opinion and statement of case for facts under which it was held that the deed of the husband, made without the knowledge of his wife, to land on which he was at the time residing with his wife, and which he owned in common with children of a former marriage, passed no title as against the homestead rights of the wife.

2. CHARGE OF COURT. — Abstract propositions of law asked by counsel to be given as instructions to the jury, though correct as applicable to minor issues, should be refused when the law has been fairly presented in the main charge of the court, as their tendency is to distract the attention of the jury by giving undue prominence to such issues.

3. EVIDENCE. — When collusion was charged by the wife between her husband and his vendee of land, on which she claimed homestead rights, it was not error to exclude evidence of the husband's declarations as to where his homestead was, when the time and circumstances under which they were made were not specifically stated, and when it was not shown that they were made in her presence.

4. EVIDENCE. — When the husband in a suit by the wife is charged with having attempted, in fraud of her rights and without her consent, to dispose of the homestead, and of seeking by its abandonment to withdraw it from the pale of exemption, his declarations, made in the wife's absence, cannot be given in evidence in his behalf or in that of his vendee, who bought with notice of the wife's claim.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

The record showed that the defendant, Alfred Farquhar, was a married man in 1855, and that he then bought the land, now in the county of Waller, and moved on it, and established his homestead thereon, and lived on it continuously until December, 1870. On the 30th of January, 1868, his first wife died, and in 1869 he married a second wife (Miss E. J. Newman). In December, 1870, he left his Waller county place, leaving the same in charge of his children and sons-in-law, with instructions as to the management, occupancy,

etc., of the same, and moved on land in the county of Washington, which was the separate property of his second wife. In 1871 his second wife died, leaving surviving her one child, Charles Jonathan Farquhar, the issue of said marriage. Charles Jonathan Farquhar died about the 1st of· November, 1871, leaving surviving his father, Alfred Farquhar, the defendant, three brothers of the half-blood, Samuel Farquhar, Alfred Farquhar, Jr., and Hugh Davis Farquhar, and two sisters of the half-blood, Elizabeth Roberson and Lucy A. Norwood. In 1874, and during his residence in Washington county, the defendant, Alfred Farquhar, married his third wife, the appellee, Amanda Farquhar, and remained in Washington county on the land in controversy until the latter part of the year 1879. On the 9th day of October, 1879, the defendant, Alfred Farquhar, joined by the brothers and sisters of Charles Jonathan Farquhar, deceased (of the half-blood), by their warranty deed of that date conveyed the land· in controversy to plaintiff, T. J. Newman. Farquhar owned the land, the old homestead in Waller county, on the 9th of October, 1879, and he had always kept a portion of his stock in Waller county during his stay in Washington county. He returned to his Waller county place soon after the sale to plaintiff, and was living thereon. He disclaimed all interest to the land in controversy in this suit. Amanda Farquhar was a sister of defendant Alfred Farquhar's first wife. Instead of going with her husband to his said place in Waller county, she remained on the land in controversy and was claiming homestead rights.

It should also be stated that from 1870 to 1879 Farquhar and his wife remained continuously on the Washington county place, and were living there October 9, 1879, when he conveyed it without her knowledge, she not being asked to sign the deed. Her husband left her during her sickness, giving her no notice of his intention to do so. Her child was born September 18, 1879, and the sale of the Washington county place occurred October 9, 1879. Farquhar would speak of his Waller county place as a home where he kept part of his stock; they would miss his stock, sometimes, from the Washington county place and then see them back again. The whole of the Waller county place was equally divided between the living children of Alfred Farquhar by his first wife some time during the year 1880. The suit was filed June 17, 1880. Newman was a cousin of Mrs. Farquhar and lived in the same neighborhood.

The charges refused which were asked by appellant were as follows:

"7. The husband, not the wife, designates and establishes the

homestead; and when he establishes it, his homestead becomes the homestead of his wife and children.

" 8. If you believe, from the evidence, that the defendant Alfred Farquhar established his homestead on the land now in Waller county in the year 1855, and that, prior to the date of the sale of the land in controversy to plaintiff, he had never abandoned the same with intention not to return to it again, then you will find for the plaintiff.

" 9. If, from the evidence, you believe that the defendant Alfred Farquhar established his homestead on a place now in the county of Waller in the year 1855, the burden of proof is upon the defendant, and she must show, beyond a reasonable doubt, the said Alfred Farquhar had abandoned his said homestead prior to the sale of the land in controversy to plaintiff, to entitle her to any homestead interest in the land sued for.

" 10. If you believe, from the evidence, that the defendant Alfred Farquhar owned two or more tracts or parcels of land at the date that he sold the land in controversy to plaintiff, and at that time he selected the place in the county of Waller as his homestead, he had the right to do so, and you will find for the plaintiff.

" 11. In order to determine whether there has been an abandonment of a homestead, when one has been acquired, two things must concur: 1st. An actual abandonment or removal from such homestead; and 2d. An intention to abandon such homestead; and no absence from such homestead will constitute an abandonment unless the proof also shows an intention to abandon the same."

*Breedlove & Ewing* and *T. J. Newman*, for appellant, on the admissibility of appellant's declarations in evidence, cited: McMillan *v.* Warner, 38 Tex., 415; Woolfolk *v.* Ricketts, 48 Tex., 37; Holliman *v.* Smith, 39 Tex., 361.

On the alleged error in refusing charges asked, they cited: Shepherd *v.* Cassiday, 20 Tex., 30; Gouhenant *v.* Cockrell, 20 Tex., 97; Mills *v.* Von Boskirk, 32 Tex., 360; Holliman *v.* Smith, 39 Tex., 362; Willis *v.* Matthews, 46 Tex., 484.

On the rejection of testimony, they cited: DeGarca *v.* Galvan, 55 Tex., 57; McKay *v.* Treadwell, 8 Tex., 176; Tucker *v.* Carr, 39 Tex., 98; Eckhardt *v.* Schlecht, 29 Tex., 129.

*Seth Shepard* and *C. C. Garrett*, for appellee, cited: Const., art. XVI, sec. 50; R. S., art. 560; Gibbs & Holliday *v.* Mayes, 4 Tex. L. J., 65; Willis *v.* Kirbie, 4 Tex. L. J., 23; Rogers *v.* Renshaw, 37

Tex., 625; Smith v. Uzzell, 56 Tex., 318; Battle v. John, 49 Tex., 211; Kirkland v. Little, 41 Tex., 456; Carter v. Randolph, 47 Tex., 376; Thomp. on Homestead Ex., §§ 470 and 474.

WEST, ASSOCIATE JUSTICE.— The refusal of the court to give cer- tain instructions, asked by appellant, is assigned as error. Under the facts and circumstances developed on the trial of this case, we are of opinion that the district court did not err in declining to give the instructions asked.

The main issue in the case was whether the homestead of the ap- pellee and her husband was in Washington or in Waller county on the 9th of October, 1879, the date of the deed of the husband of the appellee to the appellant, on which this suit was based. The question was not where it had been before that time, but where was it when the deed was executed. On this subject, the court, after stating the issue of its own motion, charged the jury: That the deed to appellant vested in him the legal title to the land in suit, unless it was, at its date, the homestead of appellee and her hus- band. He charged the jury, also, that the burden of proof was on appellee to show that the land in suit was, at the date of the deed, her homestead and that of her husband. He also expressly in- structed the jury that if they believed that, at the date of the deed of her husband to appellant, the land in suit was not the homestead of himself and wife, then they would find for the appellant. The court also, at the instance of the appellee, defined the homestead of the family to be the usual and habitual place of residence of the husband and wife and family. This, under the facts in evidence, presented the real issue in the case fairly enough for the appellant. He does not complain of any portion of the main charge of the court, or assign as error any of the instructions asked by ap-· pellee. While, perhaps, the instructions asked by appellant were not incorrect as abstract propositions, yet they were well calcu- lated to give undue prominence to minor issues in the case and to distract, to some extent, the attention of the jury from the main issue, on the right determination of which the case de- pended.

Nor did the court err in excluding the answer of the witness, Smith, to certain interrogatories propounded to him. The time when the declarations sought to be used were made is not suffi- ciently disclosed by the record, nor the circumstances under which they were made, nor does it appear that appellee was present. Nor do we think it was error in this case to exclude the evidence of New-

man and others as to the husband's declarations concerning his homestead.

When we consider the attitude in which the husband in this case stands to his wife as disclosed by the record, we do not believe his declarations made in her absence, and under such circumstances, should be allowed to prejudice her rights. Smith v. Uzzell, 56 Tex., 318, 319; Gee v. Scott, 48 Tex., 510; Eckhardt v. Schlecht, 29 Tex., 132–135.

Here he is charged in the pleadings with fraud and collusion with the appellant, and as acting in hostility to the interests of his wife, and there was much evidence introduced to sustain these averments.

In Smith v. Uzzell, above cited, the court says: " If, however, the husband in fraud of the rights of the wife and without her consent, should seek by an abandonment to withdraw the homestead from the pale of exemption, he could have no power to do so."

Besides, we are of the opinion that the evidence excluded, in itself, was not of sufficient importance in this case to justify a reversal of the cause on the sole ground of its exclusion, even if the court had in this respect committed an error.

The uncontradicted facts show that the appellee's husband left the home where he and his first wife lived from 1855 up to 1868, when she died. That he married again in 1869, and in 1870 moved to the land in suit, and there lived until the death of his second wife, and continued still to live there until 1874, when he married the appellee; that they continued to live on the land until the date of the deed to appellant, in October, 1879. There is no evidence that the husband ever resided in Waller county from the year 1870 to 1879. The evidence shows that the appellee never at any time lived in Waller county, but resided with her husband on the land in dispute down to and after the date of his deed to appellant. It was the family residence, where she and her husband permanently and habitually resided, as man and wife, and where her child was born. It was also proved that appellee was never consulted as to the sale to appellant, and knew nothing of it when the sale was made.

The proof was also uncontradicted to the effect that when appellee's husband moved from Waller county, which was before he married her, he turned his Waller county home over to his married daughters and their husbands, and established himself in Washington county on the land in suit.

It is also in evidence, that during the year 1880 (whether before or since this suit was brought the record does not show), appel-

Ice's husband had divided and partitioned among his grown chidren his old home in Waller county. The record shows that the appellant sustained such relation to the parties and those connected with them as to charge him with notice of the true state of affairs, nor does he pretend ignorance of the facts.

We are of the opinion that the conclusions arrived at by the jury were well warranted by the evidence. The justice of the case has been reached, and we find no such error in the record as would authorize us to disturb their verdict. The judgment is affirmed.

AFFIRMED.

[Opinion delivered January 25, 1884.]