# DECISIONS

# COURT OF APPEALS OF KENTUCKY.

## SEPTEMBER TERM, 1893.

CASE 88—INDICTMENT—SEPTEMBER 9.

## Scott v. Commonwealth.

APPEAL FROM BATH CIRCUIT COURT.

1. EVIDENCE — CONFIDENTIAL COMMUNICATIONS FROM HUSBAND TO WIFE.—A letter written by a husband to his wife while he was confined in jail upon a charge of murder is to be regarded as a confidential communication, and, therefore, not competent against him upon the trial to break the force of his and other testimony tending to show that deceased and his wife were criminally intimate, and that he committed the homicide in a state of passion and excitement caused by belief that such was the fact. And it is not material whether the letter was given up by the wife voluntarily or was obtained against her will. Nor does the fact that defendant admitted, on cross-examination as a witness, that he wrote the letter and identified it legalize the evidence, inasmuch as he was required by the court over his objection to answer questions relative to the letter propounded by the Commonwealth.

2. PREJUDICIAL ERRORS.—Although the defendant was found guilty of manslaughter only, the error in admitting the letter as evidence was prejudicial, as it may have influenced the jury in fixing the punishment.

SMOOT & GUDGELL FOR APPELLANT.

1. The letter from the husband was confidential and privileged, and, therefore, not competent evidence against the husband. (Civil Code.

Scott v. Commonwealth.

sec. 606; McGuire v. Malony, 1 B. M., 224; Elswick v. Commonwealth, 13 Bush, 155; Selden v. State, 74 Wis., 271; s. c., 17 Am. St. Rep., 144; 1 Greenleaf, secs. 334, 337, 342; 2 Russell on Crimes, 981–6.)

2. The instruction as to manslaughter was erroneous. The ordinary manslaughter instruction does not fit a case where a husband in a transport of passion slays the seducer of his wife. (Nichols v. Commonwealth, 9 Bush, 5⸦6; Campbell v. Commonwealth, 88 Ky., 402.)

WM. J. HENDRICK, ATTORNEY-GENERAL, AND C. W. GOODPASTER FOR APPELLEE.

1. The court properly refused the instructions asked as, conceding the strongest view that could be taken of it for the appellant, he must, in order to render his act excusable, have been the witness to the condition of affairs between his wife and Swartz, which he feared. (Blackstone's Comm. Book 4, sec. 191.)

2. The letters from the defendant to his wife were competent evidence in view of the excuse given by him for the killing.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The evidence in this case of witnesses present shows that about, or soon after, night-fall, appellant went through the back door into the store-house of deceased, situated in a village where they both resided, and, without other warning than simply pronouncing the given name of deceased, commenced to fire his pistol at and killed him, so that, although deceased fired also very soon after appellant's first shot, and both continued to fire until as many as seven or more shots were exchanged, there is no ground whatever upon which to base the excuse of self-defense. The jury, however, found a verdict of manslaughter only, fixing punishment at confinement in the penitentiary sixteen years.

We perceive no error in instructions to the jury, and the single inquiry left is, whether the court erred in permitting read in evidence a letter which appel-

lant, while confined in jail, wrote to his wife. Appellant, on being cross-examined as a witness in his own behalf, admitted he wrote the letter, and identified it. But that does not seem to us to legalize the evidence, if not otherwise competent, inasmuch as he was required by the court, over his objection, to answer questions relative to the letter propounded by the Commonwealth. He testified on the trial that he committed the homicide in a state of passion and excitement, caused by belief his wife and deceased were criminally intimate; that his suspicion was aroused by their conduct at the railroad depot in Mt. Sterling the day before, when they were together, as he believed, by pre-arrangement; that after their return home, and on the day of the killing, he sought an interview with deceased at his store-house, and, as other witnesses also testify, harsh language passed, or rather was used by appellant; that, being harassed with suspicion, he asked his mother, who lived at his house, if she believed his wife was unfaithful, and the affirmative answer to his question, and his mother's statement that about one week previously she had seen his wife and deceased together at night, and under circumstances showing they were guilty, caused him to seek deceased and take his life.

In addition to the information given to appellant by his mother, the correctness of which she swore to on the trial, other witnesses testified to conduct on various occasions of deceased and appellant's wife inconsistent with their innocence, and from which the jury was authorized to infer they had been criminally intimate.

Although manslaughter is an offense in every case without legal excuse, still it is the policy of the statute to vary the punishment, so as to suit circumstances of aggravation or extenuation as the case may be, and hence the margins fixed are not less than two nor more than twenty-one years. It thus becomes a substantial error of court to permit incompetent evidence to go to the jury, the natural effect of which is to either increase or lessen the punishment that would be otherwise inflicted. An invasion of marital rights by a seducer or adulterer is always treated as a great provocation, and juries are prone to palliate the offense and lessen the punishment of a party who takes the wrong-doer's life under sudden heat and passion induced thereby. The letter in question, we need not quote it, does not contain an admission in terms that appellant then believed his wife innocent of wrong-doing with deceased, but does contain expression of affection for and desire to see her. It seems to us the natural effect of that letter upon minds of the jury, and from the severity of punishment inflicted the actual effect, was to lessen or break the force of other testimony tending to show the guilt of the deceased, and thereby deprive appellant of that extenuating fact. If, therefore, it was error to admit the letter as evidence, it must be treated a reversible error.

The rule excluding husband and wife testifying for or against each other in a criminal prosecution, except in case of personal injury by one to the other, is, as stated in Greenleaf on Evidence, vol. 1, section 334, founded partly on the identity of their legal

rights and interests and partly on principles of pub-
lic policy which lie at the basis of civil society.  "For
it is essential to the happiness of social life that the
confidence subsisting between the husband and wife
should be sacredly protected and cherished in its
most unlimited extent; and to break down or im-
pair the great principles which protect the sancti-
ties of that relation would be to destroy the best
solace of human existence."

In Elswick v. Commonwealth, 13 Bush, 155, this court,
citing as authority Greenleaf on Evidence and Phil-
ips on Evidence, uses this language: "Information
coming to a husband or wife in consequence or by
reason of the existence of the marriage relation is
to be treated as confidential, and the confidence which
the law creates while the parties remain in the most
intimate of all relations can not be broken even after
that relation has been dissolved."

In McGuire v. Maloney, 1 B. M., 224, it was to the
same effect held that policy of the law so far pro-
tects that privacy and confidence essential to the mar-
riage relation and that necessarily spring from it, as
not only not to allow, but prevent, even after termin-
ation of the coverture, any disclosure by the wife in
a court of justice, which implies a violation of the
confidence which was reposed in her as a wife.

The evidence in this case shows the letter in ques-
tion was procured from appellant's wife by a brother
of the deceased, and thus came into possession of
the Commonwealth's attorney.   But it seems to us,
whether given up by her voluntarily or obtained
against her will, it was a disclosure of what had

been written by her· husband in the privacy. and con-
'fidence of .the marital relation, and the use of it
against the husband in this case was just as much
against the policy of' the law, because as fully within
the reason for it, as would· have been a disclosure of
what he had said to her in confidence and privacy of
the marriage relation.

The case of Selden v. State, 74 Wisconsin, 271, was
a prosecution of a person for perjury, who, in a pro-
ceeding against his wife for divorce, made affidavit
he did not know her place of residence ;. and the
question on the trial was, whether letters written by
him to her pending proceeding for divorce, show-
:ng he did know her place of residence, and which
she had placed in possession of her attorney, were
·competent evidence against him in the criminal trial.
Applying the rule mentioned, it was there held that
the letters being confidential communications, not even
the address on the envelopes could be used as evi-
dence against the husband ; and in support of the
ruling in that case, numerous decisions of English
.and American courts are cited.

In our opinion admission as evidence in this case
of the letter written by appellant to his wife was an
error prejudicial to his· substantial rights, and the
judgment is reversed for a new trial consistent with
this opinion.