Sam C. Mercer, Dock Mercer and Claude Wadsworth, Plaintiffs in Error, vs. The State of Florida, Defendant in Error.

Criminal Law—Quashing Indictment—Evidence of Co-Conspirators—Husband and Wife as Witnesses—Confidential Communications Between Can Not be Deposed by Either—Letters Between Are Inherently Confidential and Protected by the Rule Wherever Found—Sustaining Character of Witness, When and How Allowed—Objections to Evidence Not Waived by Failure to Reiterate Them to Like Subsequent Evidence.

1. For the purpose of quashing an indictment formally returned by a properly qualified grand jury, courts will never inquire into the character of the evidence that influenced its finding and return.

2. Every act and declaration of each member of a conspiracy to commit crime, in pursuance of the original concerted plan, and with reference to the common object, done or made during the pendency of the criminal enterprise, is, in contem-

plation of law, the act and declaration of them all, and is, there-
fore, original evidence against each of them.

3.  Chapter 4029 laws, approved June 4th, 1891, and Section 2863
Revised Statutes, that, combined, removes the *incompetency as*
*witnesses* of husband and wife because of the *interest* of either
in both civil and criminal cases, do not have the effect of em-
powering either of them, when they become witnesses, to give
illegal or *incompetent testimony* by detailing or exposing those
confidential transactions or communications that have passed
between them in consequence of their marriage relation, that
the law privileges and shields from exposure by either of the
parties to the communication; and this, to preserve a whole-
some public policy. The *matter* that the law prohibits either
the husband or wife from testifying to as witnesses includes
*any information* obtained by either during the marriage and
*by reason of its existence.* It should not be confined to mere
statements by one to the other, but embraces all knowledge
upon the part of either obtained *by reason of the marriage*
*relation,* and which, but for the confidence growing out of it,
would not have been known. Where the incompetency, *as*
*witnesses,* of husband and wife on the ground of *interest* has
been removed by statute, as is the case here, either or them
may testify, for or against the other, to any fact the knowl-
edge of which was acquired by them *independently of their*
*marriage relation,* in any manner not involving the *confidence*
*growing out of that relation.*

4.  Letters from the husband to the wife, or from the latter to
the former, are *inherently privileged* from the very character
of the communication itself, and such privilege protects them
from exposure in evidence wheresoever and in whosoever
hands they may be.

5.  Whenever the *character of a witness for truth* is attacked *in any*
*way,* either by showing contradictory statements of the matter
of his evidence out of court, different from that sworn to, or
by cross-examination, or by general evidence of want of char-
acter for truth, or that he has been convicted of crime, or en-
gaged in some act affecting his credibility, like suborning or
attempting to suborn a witness, or suppress testimony in the
case on trial, it is competent for the party calling him to give
*general evidence* in support of the good character of the wit-
ness. In determining the propriety of the admission of evi-

dence to sustain the character of a witness, the distinction should be observed between an attack upon the *character of the witness, as such, for credibility*, and an attack upon the character *of the testimony* that he gives for belief.

6. When the character of a witness is gone into the only proper object of inquiry is as to his reputation for *truth* and *veracity*. Neither his general character, nor particular phases or traits of character, can be gone into, but the inquiry must be confined to his reputation of character for *truth* and *veracity*.

7. When an objection to the introduction of incompetent evidence has been once properly taken, and overruled by the court, it is not waived although the same evidence may have been subsequently admitted, through other witnesses, without objection.

(Taylor, C. J., dissents from the conclusion reached by the majority of the court to *reverse* the judgment, on the ground that the error found, under the facts and circumstances in proof, was harmless.)

Writ of Error to the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*John M. Calhoun*, for Plaintiffs in Error.

*The Attorney General and John H. Carter*, for Defendant in Error.

TAYLOR, C. J.:

The plaintiffs in error were, on the 10th day of June, 1897, indicted jointly with one Westley Bush in the Circuit Court of Jackson county for wilfully driving an ox upon a railroad track. Severance was ordered as to the defendant Westley Bush, on the application of the plaintiffs in error, and they were jointly tried and con-

victed at the same term of the court and sentenced, each of them, to ten years in the penitentiary, and seek reversal here by writ of error.

Another indictment, signed by John H. Carter as acting State Attorney, against the same parties, charging the same offense, was returned by the grand jury on the 9th day of June, 1897, but upon this indictment a *nolle prosequi* was entered, and the indictment upon which the trial was had was returned by the grand jury on the 10th of June, 1897, signed by Wm. B. Farley, acting State Attorney. To this indictment the defendants plead in abatement as follows: "Now come the defendants S. C. Mercer, Dock Mercer, Claude Wadsworth and Westley Bush and for plea in abatement to the indictment against them they say: That one John H. Carter was on and before the 9th day of June, A. D. 1897, the local attorney of the Louisville and Nashville Railroad Company, a corporation, the moving prosecutor of these defendants, and that the said John H. Carter, while such local attorney under the employ and pay of said railroad company, was on the 31st day of May, A. D. 1897, appointed and sworn in as acting State Attorney in lieu of Hon. W. II. Milton, the duly elected and qualified State Attorney, and as such acting State Attorney, and also local attorney for the Louisville and Nashville Railroad Company, he advised, counseled, assisted and attended upon, when so required, the grand jury which investigated the charges against these defendants; that as such local attorney for said railroad company he prosecuted these defendants upon examining trial, and still remains in the employ of said company. That under the sole advice, counsel and instruction of the said John H. Carter, local attorney of said company as aforesaid, the grand jury of said county, on the 9th day of June, A. D. 1897, re-

turned a true bill against these defendants, charging them with the offense of driving an ox on the Louisville and Nashville railroad track, intending at such time that said ox should be run against, struck and killed or injured by the engines and cars of said railroad company; which said indictment was signed by the said John H. Carter as acting State Attorney, and who was also at said time under the employ and pay of said railroad company as aforesaid, which said indictment was received in open court and filed, and upon said indictment these defendants were arrested and held. That at the time of finding of said indictment and of the investigation of the charges against these defendants before said grand jury, the State had no other save and except the said John H. Carter, attorney for said railroad company as aforesaid, and that said indictment was returned solely and exclusively under his, the said John H. Carter's advice and counsel aforesaid. Reference is hereby made to said indictment filed May 9th, 1897, which said indictment is on file in the office of the clerk of the Circuit Court of said county and State, and the same is asked to be taken as a part of this plea; that on the 10th of June, the said John H. Carter resigned as acting State Attorney as aforesaid, and one W. B. Farley, Esq., was appointed by the court as acting State Attorney in lieu of the said John H. Carter; that thereupon the said acting State Attorney one the same day, to-wit: the 10th day of June, 1897, A. D., as aforesaid, *nol prossed* the said indictment filed on June 9th, 1897, A. D., and in lieu of said indictment the grand jury returned another indictment against these defendants, charging them with the same offense as charged in the indictment filed June 9th, and which last mentioned indictment is a true and correct copy of the indictment filed June 9th, save and except that the said indictment filed June 10th, 1897,

was filed by W. B. Farley as acting State Attorney, instead of said John H. Carter as such acting State Attorney, as the said indictment filed June 9th, 1897, was signed; that between the time of the filing of the indictment returned by said grand jury on June 9th, signed by said Carter (which was nol prossed as aforesaid), the time of the filing of the indictment on June 10th, signed by the said Farley, no witnesses were examined by the grand jury, so these defendants are informed and believe, as to the charges against these defendants, and the finding of the second indictment, as aforesaid, was based by said grand jury solely and exclusively from the testimony which was heard by them during the time that the said John H. Carter, attorney for said railroad company, was advising, counselling and assisting said grand jury as acting State Attorney as aforesaid. That the indictment under which these defendants are now charged was drawn up by the said John H. Carter, attorney for said railroad company, or under his directions, and that the only change between the first and second indictment against these defendants is the signature of the acting State Attorney." To this plea the State demurred upon the grounds that said plea was vague, indefinite and uncertain, and is insufficient to be replied to; and because the allegations in said plea contained set up no legal bar or abatement to a prosecution under said indictment. The sustaining of this demurrer by the court constitutes the first assignment of error.

The pith and substance of the plea, when stripped of its profusion of verbiage, is that a member of the bar who had been regularly appointed and qualified as acting State Attorney, and who was the generally retained local attorney of the railroad company that was the chief prosecutor in the case, counselled, advised and assisted the grand jury during the period when it found the first

indictment against the defendants, and signed such indictment; that this indictment was *nolle prosequied*, and another acting State Attorney appointed and qualified, and that a second indictment, signed by the newly appointed acting State Attorney, was then found and returned by the grand jury, without having re-examined any witnesses, and without taking or hearing any evidence besides what was taken or heard on the finding of the first indictment.

The case of Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938, is cited in support of this assignment. In that case objection was made after the indictment was found, to several attorneys, who were in the private employ of the prosecutors, taking part as assistant State Attorneys in the *trial of the cause,* and it was held that the practice was permissible to allow counsel in the employ of private parties to assist the State Attorney in the prosecution of persons charged with crime, but that the prosecution must be conducted by an *official* representative of the State, and should not be placed under the entire management and control of private parties or their attorneys, so that the public prosecution for a criminal offense should not degenerate into a private persecution. No question was raised in that case over the indictment because of private counsel being connected therewith. In this case the first appointed acting State Attorney, as the plea shows, resigned the office, and the first found indictment officially signed by him was discontinued, and another disinterested acting State Attorney being appointed in his place, the grand jury, itself an official body, at once found and returned another indictment that was signed by the newly appointed and untrammeled acting State Attorney. This course avoided all semblance of irregularity, if any, in the first indictment found, and there is nothing whatever in the

defendants' plea that can affect the legality of the second one found, and upon which the trial was had. As to the assertion in the plea to the effect that the second indictment was found without the re-examination of any witnesses, or taking of any testimony except such as was heard on the finding of the first indictment, the rule is that a court, for the purpose of quashing an indictment, will never inquire into the character of the evidence that influenced a grand jury in finding such indictment. State v. Boyd, 2 Hill (S. C.), 288, S. C. 27 Am. Dec. 376. The court below ruled rightly in sustaining the State's demurrer to this plea.

The second assignment of error is that the court erred in refusing to permit counsel for plaintiffs in error in the trial below to ask the witness W. O. Emanuel, on cross-examination, the questions: "Have you ever been prosecuted for perjury in the State of Florida?" "Have you been bound over to await the action of the grand jury of Jackson county, on the charge of perjury?" We find no such rulings in the record, and, therefore, this assignment must fall for want of a record basis.

After the State had introduced evidence that, if believed, established a conspiracy between the plaintiffs in error and their jointly indicted codefendant, Westley Bush, for the commission of the crime charged, the State Attorney propounded to two different witnesses substantially the following question: State whether or not you have ever heard either Sam Mercer, Westley Bush, Claude Wadsworth or Dock Mercer say anything prior to the time of the night when the ox was killed, with reference to what was going to take place as to the ox alleged to have been driven on the track? These questions were objected to by the defendants on the grounds that they were not confined to statements made by the defendants who were on trial, but called for the

declarations of another person (Westley Bush) not on trial for the offense, and not made in the presence of the defendants being tried, and because no conspiracy between the defendants and Westley Bush had been alleged or proved, and because they were irrelevant and immaterial. The judge overruled the objections and permitted the questions to be put and answered, and the answers were to the effect that Westley Bush, one of the conspirators, prior to the consummation of the crime, had informed the witnesses that he and the other defendants were going to commit the crime, and stated the date on which they intended to perpetrate it. These rulings constitute the third and fourth assignments of error. These rulings were entirely proper. The rule found in 1 Greenleaf on Evidence, §111, and approvingly quoted in Hall v. State, 31 Fla. 176, 12 South. Rep. 449, states the law on the subject, and sustains the propriety of the rulings. Jenkins, McRae and Clinton v. State, 35 Fla. 737, 18 South. Rep. 182.

The fifth, sixth, seventh and eighth assignments of error are abandoned here by non-presentation, and will, therefore, not be noticed, according to the established rule. Clark v. Southern Express Co., 33 Fla. 617, 15 South. Rep. 252; Blount v. State, 30 Fla. 287, 11 South. Rep. 547.

Upon the cross-examination of J. E. Brock, one of the State's witnesses, a letter written by him to his wife was exhibited to him by the attorneys for the defendants, and he was asked if he had written such letter, to which he replied, in substance, that he had written the letter, but that the following words: "that I never saw the boys that night that the ox was put upon the road," then contained in it were not put into the letter by him, and were not in it when he sent it to his wife, and he called attention to the fact that the letter on its face showed

that something else had been originally written where the quoted words occurred, but had been erased and the quoted words inserted by some one else.   With this identification of the letter, and by consent of the State Attorney as to the *time* and *order* of its introduction, it was offered in evidence on behalf of the defendants in rebuttal of the evidence of the witness who wrote the letter, but its admission in evidence was objected to, both by the State and by the witness whose letter it purported to be, upon the ground that, being a letter from the witness to his wife, it was a confidential communication as between husband and wife, and, therefore, privileged.   This objection was sustained and the exclusion of the letter is assigned as the ninth error.   Chapter 4029 laws, approved June 4th, 1891, entitled:   "An act to amend Chapter 3124 of the laws of Florida so as to authorize both husband and wife to testify in civil actions in which either may be interested," provides: "That in the trial of civil actions in this State neither the husband nor the wife shall be excluded as witnesses, where either the said husband or wife is an interested party to the suit pending."   Section 2863 of the Revised Statutes, under the heading, "Competency of Witnesses," provides that "The provisions of law relative to the *competency of witnesses* in civil cases shall obtain in criminal cases."   In construing these statutes and their bearing upon each other this court, in the case of Everett v. State, 33 Fla. 661, 15 South. Rep. 543, and again in Walker v. State, 34 Fla. 167, 16 South. Rep. 80, held, in substance, that their joint effect was to abrogate the old common law rule as to the *competency of witnesses* that forbade either the husband or wife to testify *at all* in any case, either civil or criminal, where either of them was an *interested* party; that they made both the husband and wife *competent witnesses* to testify for or

against each other in all cases, civil or criminal, where either of them was an interested party. But in neither of these cases decided here, nor in any other State having similar enabling statutes, have we been able to find any declaration that the removal from husband and wife of their *incompetency as witnesses* because of *interest* in the cause has the effect of empowering either of them, when they become witnesses, to give illegal or *incompetent testimony*, by detailing or exposing those transactions or communications that have passed between them in the sacred confidence and trust that should exist between husband and wife; or that the removal of the incompetency of husband and wife *as witnesses* on the ground of *interest* removes the inhibition of the law against the exposure in evidence of confidential communications between them. Such confidential communications between husband and wife have always been regarded as *privileged*, and, when attempted to be detailed or divulged by either of the parties to whom the communication has been entrusted, the law not only forbids, but will not permit it to be done, but regards it as a *character of testimony* that such witnesses are not competent to depose, and upon the same ground that it prohibits the violation by an attorney of the confidence reposed in him by his client, that of *public policy*. Society has a deeply-rooted interest in the preservation of the peace of families, and in the maintenance of the sacred institution of marriage, and its strongest safeguard is to preserve with jealous care any violation of those hallowed confidences inherent in, and inseparable from, the marital status. Therefore the law places the ban of its prohibition upon any breach of the confidence between husband and wife by declaring all confidential communications between them to be *incompetent matter* for either of them to expose as witnesses. The reason

of the old rule for rendering *interested witnesses* incompetent to testify *at all* in any case to which they were parties was because their *interest* was supposed to be such a strong incentive to perjury, and where husband or wife was *interested* in a cause, both of them were excluded as *incompetent witnesses* for any purpose because of their *unity of interest*; they, in the eye of the law, being regarded as one person, and whenever either was *intcrested*, both were considered to be equally interested, and the incentive to perjury from such interest was considered to be as strongly operative upon the one as upon the other. But the reason of the rule for excluding the *confidences* between husband and wife as *incompetent matter* to be deposed by either of them, though they may be competent *witnesses* to testify to other facts, is found to rest in that public policy that seeks to preserve inviolate the peace, good order and limitless confidence between the heads of the family circle so necessary to every well ordered civilized society. The *matter* that the law prohibits either the husband or wife from testifying to as witnesses includes *any information* obtained by either during the marriage *and by reason of its existence.* It should not be confined to mere statements by one to the other, but embraces all knowledge upon the part of either obtained *by reason of the marriage relation,* and which, but for the confidence growing out of it, would not have been known. And the same rule prevails in full force even after the marital relation has been dissolved by death or divorce./ Where the incompetency *as witnesses* of husband and wife on the ground of *interest* has been removed by statute, as is the case here, either of them may testify, for or against the other, to any fact the knowledge of which was acquired by them *independently of their marriage relation,* in any manner not involving the *confidence growing out of the marriage*

*relation.* As Mr. Greenleaf puts it: "The great object of
the rule is to secure domestic happiness by placing the
protecting seal of the law upon all confidential commu-
nications between husband and wife; and whatever has
come to the knowledge of either by means of the hal-
lowed confidence which that relation inspires can not
be afterwards divulged in testimony, even though the
other party be no longer living." 1 Greenleaf on Evi-
dence (15th Ed.), §§337, 334; 254; 2 Taylor on Evi-
dence, §§908, 909, 910; Commonwealth v. Sapp, 90 Ky.
580, 14 S. W. Rep. 834, S. C. 29 Am. St. Rep. 405,
*and citations in notes*; Jacobs v. Hesler, 113 Mass. 157;
Drew v. Roberts, 48 Me. 35; White v. Perry, 14 W. Va.
66; Aveson v. Kennaird, 6 East, 188; Keater v. Dim-
mick, 46 Barb. (N. Y.) 158; Robin v. King, 2 Leigh
(Va.), 140; Bigelow v. Sickles, 75 Wis. 427, 44 N. W.
Rep. 761; McGill v. McGill, 19 Fla. 341; Lucas v.
Brooks, 18 Wall. 436; Henderson v. Chaires, 25 Fla. 26,
6 South. Rep. 164; Robinson v. Chadwick, 22 Ohio St.
527; Raynes v. Bennett, 114 Mass. 424; Ayres v. Ayres,
28 Mo. App. 97; Goodrum v. State, 60 Ga. 509; Wilker-
son v. State, 91 Ga. 729, 17 S. E. Rep. 990; Selden v.
State, 74 Wis. 271, 42 N. W. Rep. 218; Lingo v. State,
29 Ga. 470. The letter from the husband to the wife
here excluded, however, was not sought to be intro-
duced directly through the wife as a witness to whom it
had been written, but, in some manner, not disclosed
by the record, had found its way to the possession of
the attorneys for the defendants, and its offer in evidence
was from their immediate custody. There is a consid-
erable array of authorities to the effect that when con-
fidential communication between husband and wife or
between attorney and client get out of the possession
and control of the parties to the confidence and that of
their agents and attorneys, and find their way into the

possession and control of third persons, regardless of the manner in which the possession thereof may be obtained by such third persons, that then such communications lose the protected privilege of the law and become competent and admissible evidence. To this effect, see 1 Greenleaf on Evidence §254 *a* and the cases there cited; also the cases cited in the notes to Commonwealth v. Sapp, 29 Am. St. Rep. 415 *et seq.* We can not agree to the correctness of this rule thus broadly laid down by these and other authorities, but think the policy of the law, that forms the foundation of the general rule, is far more strongly upheld and subserved by those authorities that recognize and declare certain classes of communications to be privileged from the *inherent character of the communication itself*, and that in such cases the privilege attaches to the *communication itself* and protects it from exposure in evidence wheresoever or in whosoever hands it may be. Judge SHIRAS, now of the Supreme Court of the United States, in the case of Liggett v. Glenn, 2 C. C. A. 286, 51 Fed. Rep. 381, with great force and clearness explains what we conceive to be the correct rule as follows: "In considering questions of this kind, regard must be had to the nature of the evidence sought to be elicited. It not unfrequently happens that deeds, contracts or other written instruments may be delivered by a client to an attorney under such circumstances that the attorney can not be compelled or permitted to produce the same in evidence against his client at the demand of an adversary party. In this class of cases the deed or other written instrument is not itself privileged. It is merely the possession of the attorney that is protected. As he received the instrument by reason of the confidential relation of client and attorney, he can not be compelled to yield up such possession at the demand of another, nor to reveal the contents of the paper. In

such cases, however, it is open to the other party to prove, by any competent evidence, the contents of the paper because the same are not, in and of themselves, privileged. The decisions in this class of cases do not touch the principle that is involved in the matter of confidential communications, whether oral or written, passing between client and counsel. In the latter instance the privilege attaches to the communication itself. In order that there may be perfect confidence established between client and counsel, and upon considerations of enlightened public policy, the rule has been established that the client may freely communicate to his counsel all facts connected with the subject out of which grows the relation in question, and that the communication, thus confidentially made, can not be used in evidence against him, unless he himself, by some unequivocal action on his part, deprives the communication of its privileged character, and thereby renders it competent evidence against himself. To fairly carry out the real purpose of the rule, it must be held that privileged communications are, in and of themselves, incompetent, regardless of the mere manner in which it is sought to put them in evidence. * * * The admissibility of the communication, in our judgment, is not dependent upon the manner in which control thereof is obtained from the counsel, but upon the inherent character of the communication itself. If the admission or statement sought to be put in evidence was made by reason of the confidential relation existing between client and counsel, it becomes a privileged communication, and as such it is not competent evidence against the client. Its competency is not dependent upon the mere manner in which knowledge thereof may be obtained from counsel. The principle forbidding its use is not adopted as a mere rule of professional conduct on the part of the

attorney. It confers a right upon the client for his protection and advantage, and which he alone is authorized to waive. It will not do to hold that the communication loses its confidential and privileged character if knowledege thereof can be obtained by means which do not involve the counsel in a breach of professional duty. * * * The argument, founded upon the assumption that the admissibility of confidential communications between client and counsel is dependent solely upon considerations of the duty of counsel not to make known that which was communicated to him professionally, is, in our judgment, faulty, in that it ignores the main purpose of the rule, which is that the client shall be at liberty to freely communicate to his attorney knowledge of all matters connected with the business in hand upon the assurance that confidential communications thus made are privileged and can not be used in evidence against him, unless he deprives them of their privileged character." The same reasoning applies with equal, if not greater, force to the communications between husband and wife, upon the inviolacy of which depends that perfect confidence between the twain so necessary to maintain the sacred institution of marriage up to that standard demanded by every well ordered and civilized society. And the same reasoning and rule was applied in the exclusion of a letter from husband to wife in the case of Wilkerson v. State, 91 Ga. 729, 17 S. E. Rep. 990. Bowman v. Patrick, 32 Fed. Rep. 368; Scott v. Commonwealth, 94 Ky. 511, 23 S. W. Rep. 219; Reg v. Pamenter, 12 Cox's Crim. Cas. 177; Dreier v. Continental Life Ins. Co. 24 Fed. Rep. 670; Mahner v. Linck, 70 Mo. App. 380; Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. Rep. 705. We think the letter offered in evidence here from the witness Brock to his wife was inherently a confidential communication, and that it was

privileged from exposure in evidence, in and of itself, regardless of the custody from which it was produced at the trial, and that its admission in evidence was properly refused.

Several witnesses were introduced in rebuttal by the State for the purpose of sustaining the general reputation and character for truth and veracity of several other State witnesses. This evidence was objected to by the defendants on the ground that the witnesses for the State, whose characters were sought by it to be sustained, had not been impeached by the defendants, and because their reputation for truth and veracity had not been attacked and were not at issue. These objections were overruled and the testimony admitted, and this ruling is assigned as the tenth and twelfth errors. There was no error here. The general characters of the State's witnesses, whose reputation for truth and veracity in the communities in which they lived was sought to be established and sustained by the challenged evidence, had not been .attempted to be impeached by any *direct general* assault thereon, it is true, but the defendants, as to each of said witnesses, had not only on cross-examination and by their own witnesses undertaken to cast discredit upon them for truth and veracity but introduced various witnesses who testified to *contradictory statements* alleged to have been made by them on other occasions respecting the subject-matter of their testimony conflicting with the evidence at the trial. The rule governing the admissibility of evidence to *sustain the general character* of a party's witness for truth and veracity is very well settled, and is accurately stated by Judge REDFIELD in Paine v. Tilden, 2 Vt. 554, as follows: "It is now well settled that, whenever the *character of a witness for truth* is attacked *in any way,* it is competent for the party calling him to give *general evi-*

*dence* in support of the good character of the witness. And we do not think it important whether the character of the witness is attacked by showing that he has given contradictory accounts of the matter out of court, and different from that sworn to, or by cross-examination, or by general evidence of want of character for truth." In Stevenson v. Gunning's Estate, 64 Vt. 601, 25 Atl. Rep. 697, it is said: "It is observable that a distinction is taken between an attack upon *the character* of the *witness* as such *for credibility* and the character *of the testimony given for belief*. It is only when *the character of the witness for credibility is directly attacked,* by general evidence regarding his standing and character for truth and veracity, or by showing that he has made contradictory or inconsistent statements, either out of court, or in court, or that he has been convicted of some crime, or engaged in some act affecting his credibility, like suborning or attempting to suborn a witness, or suppress testimony in the case on trial, that sustaining evidence can be used." Phillips v. State, 19 Tex. App. 158; Glaze v. Whitley, 5 Oregon, 164; Clark v. Bond, 29 Ind. 555; Harris v. State, 30 Ind. 131; State v. Cooper, 71 Mo. 436; Burrell v. State, 18 Tex. 713; George v. Pilcher, 28 Gratt. (Va.), 299, S. C. 26 Am. Rep. 350; Isler v. Dewey, 71 N. C. 14; Holley v. State, 105 Ala. 100, 17 South. Rep. 102; 1 Greenleaf on Evidence, §462.

In addition to the proof by the State to sustain the general character of its witnesses for truth and veracity, the State Attorney was allowed, over the objection of the defendants, to go further in its sustaining proof, and to interogate the supporting witnesses by independent questions as to the character for *honesty* of its sustained witnesses, and this ruling is assigned as the eleventh error. The majority of the court are of the opinion that this ruling is reversible error. The general well-settled

rule of law is, that when the *character of a witness* is gone into the only proper object of inquiry is as to his reputa-. tion for *truth* and *veracity*. I Taylor on Evidence, p. 257[45] *et seq.* and cases cited. Neither his general character, nor particular phases or traits of character can be gone into, but the inquiry must be confined to his reputation or character for *truth* and *veracity*. The writer of this opinion, while concurring in the correctness of the rule announced, can not agree with the majority of the court that the inquiry into the *honesty* of the State's witnesses permitted in this case is sufficient cause for reversal. The inquiry into the reputation of the witnesses for *honesty* was irrelevant and incompetent, it is true, but my view is that the State had the right under the circumstances to sustain the character of its witness for *truth* and *veracity* to the fullest extent, and the further inquiry as to their *honesty* could not possibly have affected or prejudiced the defendants in any manner, except through its bearing upon the question of the *truth* and *veracity* of the State's witnesses. There was no issue or question in the case that turned upon, or that could be affected or influenced in any manner by, an inquiry into the character of the State's witnesses for *honesty* as contradistinguished from truthfulness. Therefore, according to my view, the permitted inquiry into the character of the witnesses for *honesty* amounted to nothing more in this case than an indirect inquiry into their character for *truth* and *veracity*, and into the latter, as before seen, the State had the fullest right to go. I therefore think that while the sustaining proof should not have been permitted as to the *honesty* of the State's witnesses, that it was harmless error in this case, and does not justify reversal.

The defendants objected to the evidence of only one or two of the first witnesses offered by the State to

sustain the character of its other witnesses for truth and veracity and honesty, but several other witnesses were subsequently offered by the State who testified, without objection, to the good character of the same State's witnesses for truth and veracity and honesty. It is contended for the State that this failure on the part of the defendants to extend their objections *to all* the sustaining testimony was a waiver of the objections made to the first witnesses giving the same evidence, and cured the error, if any, in the admission of that specifically objected to. Many authorities sustain this contention. But we are of opinion that the rule founded in the soundest reasoning is announced in those cases that hold that "When an objection to the introduction of incompetent evidence has been *once* properly taken, and overruled by the court, it is not waived although the same evidence may have been subsequently admitted, through other witnesses, without objection." Louisville & Nashville Railroad Co. v. Gower, 85 Tenn. 465; Graves v. People, 18 Colo, 170; 32 Pac. Rep. 63; Pfeil v. Kemper, 3 Wis. 315.

The thirteenth and fourteenth assignments of error complain of the two following charges given by the court to the jury: 1. "In determining what the facts are, you are the sole judges of the evidence and of the credibility of the witnesses. If you are not able to reconcile the testimony of the different witnesses, it is your province to determine for yourselves who is, and who is not, worthy of belief, and who is speaking the truth. In determining this you may consider the attitude of the several witnesses, both for the State and the defendants, with respect to the case, what interest they have in it, or in its results, what relationship, if any, they bear to those who are interested therein, what influences, if any, are operating upon them in giving their testimony, their

manner, and the nature of their testimony, and their general reputation for truth in the community in which they live." 2. "This is not a private suit between the Louisville and Nashville Railroad Company and the defendants, but is a prosecution in the name of the State of Florida against these defendants for alleged violation of a law of the State which is designed to protect the safety of the traveling public, and if you have any bias or prejudice for or against the railroad company, it is your duty to discard it from your minds in considering the evidence in this case, and to render a verdict according to what you may find to be the facts." It is urged against these instructions that they had a tendency to confuse and mislead the jury. We discover nothing improper in either of them. They clearly state the propositions intended thereby to be conveyed to the minds of the jury, and contain nothing that is improper from a legal standpoint, or that was not warranted by the facts and circumstances of the case.

The fifteenth, sixteenth, seventeenth and eighteenth assignments of error are abandoned.

The nineteenth, twentieth, twenty-first and twenty-second assigmnents of error are predicated on the refusal of the court to grant a new trial upon the grounds that the verdict was contrary to the evidence, contrary to law, and was not supported by the evidence. In view of the reversal for the error found and the grant of a new trial, we abstain from any consideration of these assignments.

The twenty-third assignment of error is abandoned here.

For the error found in the admission of proof as to the character for *honesty* of the State's witnesses, the judgment of the court below is reversed and a new trial ordered.