MAY FASKEN v. ROBERT FASKEN.

No. 3909.     Decided February 27, 1924.

(260 S. W., 701.).

1.—Divorce—Evidence—Confidential Communications.

Under article 4633, Rev. Stats., confidential communications between husband and wife (a letter and the answer thereto) were admissible in evi-

dence in a suit between them for divorce. The issue was on abandonment by the wife and the correspondence related to a return to her husband. (Pp. 467-472).

**2.—Same—Statutes and Decisions Reviewed.**

The course of legislation on testimony of a party to the suit, and in divorce cases (resulting in arts. 3688, 3689, 4633, Rev. Stats.,) and of the decisions thereon (Wright v. Wright, 6 Texas, 3; Nogees v. Nogees, 7 Texas, 538; Mitchell v. Mitchell, 80 Texas, 101; Lanham v. Lanham, 145 S. W., 336; Endick v. Endick, 61 Texas, 559; Stafford v. Stafford, 41 Texas, 111; Cornish v. Cornish, 56 Texas, 564; Gee v. Scott, 48 Texas, 510; are reviewed with respect to their bearing on the admissibility of confidential communications in actions for divorce. (Pp. 468-471).

Question certified from the Court of Civil·Appeals for the Eighth District, in an appeal from Martin County.

The Supreme Court referred the question certified to the Commission of Appeals, Section A, for its opinion thereon and here adopts same as its answer to the question.

*Jones, Jones, Hardy & Grambling,* for appellant.

Private letters from the wife to the husband, or from the husband to the wife dealing with the relations existing between them, are confidential communications which are inadmissible in evidence in a divorce suit between the husband and wife over objection of the opposite party. Stafford v. Stafford, 41 Texas, 111; Cornish v. Cornish, 56 Texas, 564; Gee v. Scott, 48 Texas, 514; Lanham v. Lanham, 145 S. W., 336; Lanham v. Lanham, 146 S. W., 638; Brown v. Brown, 53 Mo. App., 454; Moore v. Moore, 51 Mo., 118; Berlin v. Berlin, 52 Mo., 151; Miller v. Miller, 14 Mo., App., 418; King v. King, 42 Mo. App., 454; Ayers v. Ayers, 28, Mo. App., 97; Mitchell v. Mitchell, 15 S. W., 705; Scheirstein v. Scheirstein, 68 Mo. 205; Long v. Martin, 54 S. W., 473; McCormick v. State, 186 S. W., 95; Wallace v. Wallace, 194 S. W., 523; Revercomb v. Revercomb, 222 S. W., 899.

*B. W. Baker, B. F. Haag,* and *Whitaker & Peticolas,* for appellee.

This being an action for divorce, plaintiff was entitled to introduce the letter from himself, urging his wife to return home and her answer refusing further to live with him, even though conceded to be of a confidential nature, for the reason that the bar against the introduction of confidential communications between husband and wife has been removed by Art. 4633 of the Revised Statutes of the State of Texas. Barrow v. Barrow, 97 S. W., 120; Cornish v. Cornish, 56 Texas, 564; Edwards v. Dismukes, 53 Texas, 605; Bank v. Hill, 151 S. W., 652; Gee v. Scott, 48 Texas, 510; Gisel v. Gisel, 218 S. W., 664; Irwin v. Irwin, 231 S. W., 834; Knight v. Knight, 220 S. W., 609; King v. Sassaman, 64 S. W., 937; Kirkland v.

Mathews, 174 S. W., 830; Lohmuller v. Lohmuller, 135 S. W., 751; Lanham v. Lanham, 145 S. W., 336; McCrary v. McCrary, 230 S. W., 187; Mitchell v. Mitchell, 15 S. W., 705, 80 Texas, 101; Moore v. Moore, 51 Mo., 118; Maget v. Maget, 85 Mo. App., 6; Meyer v. Meyer, 138 S. W., 70; Schierstein v. Schierstein, 68 Mo. App., 205; Schweikert v. Schweikert, 83 S. W., 1095.

The letter from defendant to plaintiff, complained of, in which she refuses to further live with him, being in itself a wrong against, a repudiation of, and in fact, an act destructive of the very marital relation itself, is not such a communication as is intended to be protected by the general rule sustained on the ground of public policy, which seeks to protect the sanctity of the home, especially, where there is no other witness to the statement or letter, and its exclusion would enable the spouse guilty of the wrong to perpetrate a fraud against the marital rights of the injured party. Sexton v. Sexton, 105 N. W., 314; Fowler v. Fowler, 11 N. Y. Supp., 419; Seitz v. Seitz, 32 Atl., 578.

MR. JUDGE BLANKS delivered the opinion of the Commission of Appeals, Section A.

The Honorable Court of Civil Appeals for the Eighth Supreme Judicial District, at El Paso, has certified the following question to the Supreme Court:

"The appellee, Robert Fasken, brought this suit on December 30th, 1920, against his wife, the appellant, May Fasken, for divorce upon the statutory ground of abandonment.

The jury found that defendant voluntarily absented herself from the bed and board of plaintiff for the space of three years with the intention of abandonment and that plaintiff neither caused, procured nor consented to such separation.

Judgment for divorce was rendered in plaintiff's favor.

The wife appeals and asserts that the evidence is insufficient to show that she voluntarily left the bed and board of her husband for the statutory period of three years and that the undisputed evidence also discloses that the plaintiff caused or contributed to cause and acquiesced in her absence for which reason the divorce should be denied.

Error was also assigned to the admission in evidence of a letter from plaintiff to defendant, reading:

' "Toronto, Oct. 19, 16.

Dear May:

Baby received his bibs this morning, and was very interested in the picture of a horse on one of them.

Some weeks ago I wrote you but have not received any reply and so am anxious to hear from you as to how you are.

I would like you to come home as soon as possible, and certainly

not later than the 1st of November, which I understand was the latest date set by the doctor you consulted for your being able to come home.

Tomorrow I go to the Western Hospital to have an operation on my nose, and will at the same time have my tonsils removed.

The Red Cross are doing very well indeed in their three days campaign here and will certainly get the $250,000 they aim at as Toronto's contribution.

Baby is fine and runs around like a little man.

Father is considerably better.

Write and let me know what day you will be down and how you are.

Your loving husband,

Rob." '

And, the reply of Mrs. Fasken thereto which reads:

' "Haileybury.

Dear Rob:

I received your letter Saturday. I was sorry to hear that you had to undergo another operation for your nose and throat. No doubt by the time you receive this letter you will have quite recovered.

If you practice your religion openly, also your Father knowing that you are doing so, I shall consider returning to you, otherwise I never shall.

I am glad the baby liked his bibs; I worked them for him; also made a doll which I posted yesterday.

I am very well.

May.

Tuesday, October the twenty-third." '

This court overruled all assignments and affirmed the judgment. A copy of our opinion is hereto attached and made a part of this certificate.

The case is now pending upon appellant's motion for rehearing. In the motion our ruling upon the admissibility of the letters is assigned as error. The letters were admitted in evidence over an objection by appellant that they were confidential communications between husband and wife and therefore inadmissible.

Upon the admissibility of such letters there arises an issue of law which this court deems it advisable to present to the Supreme Court for adjudication.

Under the authority of Article 1619 R. S. this Court therefore respectfully certifies to the Supreme Court such question, which is:

Were the letters admissible in evidence over the objection stated?"

The question has been referred to the Commission of Appeals, Section A, for answer, and it is accordingly answered as follows:

Originally, at common law, no party to any suit could testify therein. Upon the competency of witnesses the common law proceeded in distrust of human nature, and assumed that a witness, if interested, was incapable of verity. 1 Phillips Ev. 46.

And at the common law the wife's civil existence was merged into that of her husband, and there was considered existent such a union of interest, or as expressed by an early writer, such a "oneness", that it was said by Mr. Blackstone in his Commentaries, Vol. 1, p. 443, that husband and wife were not allowed to testify for, or against each other, "partly because it is impossible that their testimony should be indifferent, but principally because of the union of persons, and, therefore, if they were admitted to be witnesses for each other, they would contradict one maxim of law, 'no one should be a witness in his own cause;' and, if against each other, they would contradict another maxim, 'no one is obliged to criminate himself.' "

Neither at common law, nor the canon law was the right of divorce recognized, and before the American revolution, and even prior to the English divorce act of 1857, divorces in England were in the cognizance of Parliament and the ecclesiastical courts, 9 R. C. L., 214, 14 Cyc., 581, and it was the rules of these latter forums our early courts followed in divorce matters, Wright v. Wright 6 Texas, 3, Nogees v. Nogees, 7 Texas, 538, but in our jurisprudence, partly because of the disqualification of all parties to suits arising from interest, and because of a consideration of public policy which looked askance at divorces, and sought to preserve the marriage relation against rupture and dissolution, it early became a fixed rule of the common law as existing in, and adapted to the changed conditions of the American states, that neither husband nor wife should be permitted to testify in divorce actions between them.

And even when a husband and wife, or either, were litigants against a stranger, they could not, at common law, testify for or against each other, and the disqualification of husband and wife to testify in such cases was put not only upon the ground of interest, but upon one of public policy, stated by early text writers as follows:

Starkie, in his work on Evidence, (vol. 2, p. 706,) says of the rule, 'it is founded partly on the identity of interest in these persons, and partly on the grounds of public policy, for fear of creating distrust and dissensions between them, occasioned perjury.'

Greenleaf uses almost the same language, (vol. 1, sec. 334.) The rule is laid down in Butler's Nisi Prius, (page 286,) thus: 'Husband and wife cannot be admitted to be witnesses for each other, because their interests are absolutely the same; nor against each other, because contrary to the legal policy of marriage.' "

And this situation existed at the time of the general adoption of the common law in Texas. But gradually, as the civil rights of the wife began to be recognized, and as a more enlightened judiciary perceived the folly and stupidity of a rule which prevented parties from testifying solely on account of interest, and the particular injustice in the disqualification of husband and wife, arising both from interest and their theoretical "oneness," where one or both

were defendants in criminal cases, or litigants against third parties in civil cases, there arose a movement to relax or abrogate the common law rules, and the English parliament in 1851 adopted Lord Brougham's act relieving parties to such actions of the previous disqualifications mentioned, and about the same time similar action was had in practically all the American States, although it was not until 1871 that the situation was remedied in Texas by the passage of what now appear as Arts. 3688 and 3689. None of this remedial legislation, however, had reference to divorce actions, which were controlled by the previous statute on that subject adopted in 1841, more fully referred to later, and the then existing rules of the common law, one of which was that neither husband nor wife should testify at all in divorce actions between them. However, though husband and wife might testify for each other in criminal cases where one or both were parties defendant, or in civil cases where one or both were arrayed against a stranger to the marital relation, it was necessary, as a matter of sound public policy, in all such actions to provide some safeguard against the exposure of statements, conversations and communications occurring between husband and wife and arising out of the confidence inspired by the marriage status, to the end that this status be preserved and fostered, rather than impaired.

The doctrine of the inadmissibility of confidential communications between husband and wife arose out of this latter situation, that is, suits wherein they, or either of them were litigants against third parties, and did not arise from, and had no relation to divorce actions. For, in divorce actions, the spouses could not testify at all, and therefore statements or communications passing between them would necessarily have to come from a stranger to the marital relation, and such as the stranger heard were not confidential, *ab initio*, because of their very utterance before him. Communications between husband and wife made in the presence and hearing of third parties have never been considered confidential, or within the rule excluding such communications. 28 R. C. L., 528, 29 A. S. R., 412, Ann. Cases, 1916-B, 603.

As more fully developed and applied by later authorities, but necessarily relating, as above shown, only to those cases, wherein the husband and wife, or either, were litigants adversary to third parties, and having no bearing whatever on divorce actions, it became a rule of the common law that communications between husband and wife not made in the presence and hearing of third parties, were to be deemed confidential and privileged.

The true rationale underlying the exclusion of such communications, as has been frequently pointed out by courts and text writers, is the preservation of the privacy and confidences arising from the marital relation, so that no curious ear shall hear statements, nor

prying eye, even that of the sovereignty itself, shall see communications, the spouses have considered of that private and confidential character as not to be uttered before third parties. The enforcement of the rule is to promote and encourage the utmost confidence between husband and wife and thus to aid in the preservation of the marriage status. 28 R. C. L., 524, Mitchell v. Mitchell, 80 Texas, 101, Lanham v. Lanham, 145 S. W., 336; Greenleaf, Ev. 15 Ed., 254, 334, 337.

And so rigorously enforced is this salutary principle that any communication between husband and wife arising out of the confidence of the marital relation is privileged both during the existence of the relation, and even after it has been terminated by divorce, or the death of one of the parties. Mitchell v. Mitchell, supra, Lanham v. Lanham, supra.

Bearing in mind these fundamental principles, it becomes necessary to consider the progress and status of legislation on the subjects in Texas.

In 1841, there was adopted in this State, what subsequently appeared as Art. 2863, of the 1879 edition of the Revised Statutes, reading as follows:

"In all suits and proceedings for divorce from the bonds of matrimony the defendant shall not be compelled to answer upon oath, nor shall the petition be taken for confessed for want of an answer, but the decree of the court shall be rendered upon full and satisfactory evidence, independent of the confession or admission of either party, and upon the verdict of a jury, if a jury shall have been demanded by either party, and if not, upon the judgment of the court affirming the material facts alleged in the petition."

The phrase, "independent of the confession or admission of either party," used in the statute had no relation to confidential communications. It could not have had, because, fundamentally the common law doctrine excluding such communications, was never existent as relating to divorce actions, in addition to which, as pointed out by the Supreme Court in Endick v. Endick, 61 Texas, 559, the purpose in the use of the phrase was to guard against the procurement of collusive or fraudulent decrees of divorce.

Thirty years later, in 1871, the legislature adopted what now appear as Articles 3688 and 3689, Rev. Stat., reading as follows:

"Art. 3688. No person shall be incompetent to testify on account of color, nor because he is a party to a suit or proceeding or interested in the issue tried.

Art. 3689. The husband or wife of a party to a suit or proceeding, or who is interested in the issue to be tried, shall not be incompetent to testify therein, except as to confidential communications between such husband and wife."

The obvious purpose in the enactment of Art. 3689, was to remove

the previously existing common law disqualification of either husband or wife as witnesses arising from their interest as parties litigant adversary to third parties, and to maintain intact the already existing common law protection against the disclosure in such suits of confidential communications between husband and wife, the latter part of the article being merely declaratory of one common law provision and the first part of it expressly in abrogation of another.

As legislation thus stood it was considered by the Supreme Court in the two cases of Stafford v. Stafford, 41 Texas, 111 and Cornish v. Cornish, 56 Texas, 564, and it was held that Art. 2863, Rev. Stat. 1879, did not permit either husband or wife to testify in divorce actions and that Art. 3689, then appearing as sec. 6826, Pas. Dig., had no application to suits for divorce, in that the mere removal of disqualification to testify because of interest did not affect the rule of the common law making both husband and wife incompetent to testify in divorce actions, which, fundamentally, as heretofore pointed out, was founded not only upon *interest* of the parties, but upon both interest and public policy.

Following these decisions, and in 1897, the legislature amended Art. 2863, (Rev. Stat. 1879 , and adopting the same wording employed in the previous enactment, except to eliminate the phrase, "independent of the confessions or admissions of either party," added the following language:

"In all such suits and proceedings the husband and wife shall be competent witnesses for and against each other, but neither party shall be compelled to testify as to any matter that will criminate himself or herself; and where the husband or wife testifies, the court or jury trying the case shall determine the credibility of such witness and the weight to be given such testimony; but no divorce shall be granted upon the evidence of either husband or wife, if there be any collusion between them."

This now appears as Art. 4633 of our present statute.

As previously pointed out the elimination of the phrase respecting "confessions and admissions," has no relevancy to the question here under discussion. Endick v. Endick, supra.

Considering this amendment, it will be observed that no provision was made excluding communications between husband and wife, but they were situated by the law exactly as strangers litigant. Other than a minor restraint upon the granting of divorces if collusion exists between the parties, the provision operates to remove all previously existing restrictions differentiating litigation between husband and wife as adversaries, and that between strangers.

In the great majority of states, where either by judicial relaxation of the common law rule, or by legislative abrogation of it, husband and wife were made competent to testify for or against each other in divorce actions, it was coincidently provided that, notwithstanding

their competency to testify for or against each other, they yet might not testify to confidential communications occurring during the existence of the marriage relation, and in some states they might not testify to ''any conversations,'' or ''any communications,'' occurring between them during the existence of the marriage relation, but the exceptions in all of them arise by force of statute.

As between husband and wife, both or either, when arrayed against a third party, or when defendants in criminal actions, it has always been held, and exists in most jurisdictions by express statutory enactment to that effect, that confidential communications between the spouses are privileged, and as heretofore suggested the rule rests upon the soundest consideration of public policy, Lanham v. Lanham, supra; Moore v. Moore, supra; Gee v. Scott, 48 Texas 510 and in such cases the removal of incompetency to testify for or against each other does not affect the common law rule making confidential communications inadmissible, Hopkins v. Grimshaw, 165 U. S., 342, 41 L. Ed., 739, Mercer v. State, 40 Fla., 216, 24 So., 154; Ex Parte Beville, 58 Fla., 170, 50 So., 685, 27 L. R. A. (N. S.), 273; McCormick v. State, 135 Tenn., 218, 186 S. W., 95, R. C. L., vol. 28, p. 524, but neither situation is here presented.

It follows from what has been said that the letters quoted in the certified question are, in our opinion, admissible, and we recommend that the question propounded be answered in the affirmative.

The opinion of the Commission of Appeals answering certified question adopted and ordered certified to the Court of Civil Appeals.

C. M. CURETON,
Chief Justice.