## C. L. STORRS ET AL., APPELLANTS, vs. ELLEN F. STORRS, ET AL., APPELLEES.

1. Where S., a married woman, by her next friend, files a bill against her husband, S., and against Springer, a judgment creditor of her husband, seeking to enjoin and restrain the creditor of the husband from selling certain property levied upon by the creditor to enforce his judgment, and that is claimed by her to be her separate property, her husband, S., is not a competent witness for the wife to prove the property so levied on by the creditor to be his wife's separate property.

2. Where the wife seeks by bill to enjoin a creditor of her husband from selling property by virtue of a judgment and execution against her husband, upon the ground that it is her separate property, she must allege in her bill whether it is her equitable separate estate or her legal separate estate, and if claimed by purchase she is held to full and strict proof that it was paid for with her money, and in the absence of this proof the property is presumed to be the property of her husband.

Appeal from the Circuit Court for Franklin county.

JUDGE McCLELLAN, of the First Circuit, sat in the place of Justice Raney, who was disqualified.

The facts of the case are stated in the opinion.

*John W. Malone* for Appellants.

No counsel appeared for Appellees.

JUDGE McCLELLAN delivered the opinion of the court:

C. L. and Ellen F. Storrs are husband and wife. In May or June, 1881, C. L. Storrs went to Chicago, Illinois, and represented to Warren Springer that he was building in Florida a tug boat to be called the Benjamin L. Curtis, and purchased from said Springer the machinery for said tug boat at an agreed price of about $1,700, and drew four

drafts in favor of said Springer on E. Emlin & Sons, upon which said Springer negotiated and realized about the sum of $2,200, that the money realized from said drafts was paid over to said C. L. Storrs except about $1,400 that was applied to the payment of said machinery, leaving said Storrs indebted to said Springer about $300, for which said Storrs gave his individual note; that said machinery was purchased from said Springer on the credit of C. L. Storrs alone, Ellen F. Storrs, his wife, not being known in the transaction. When C. L. Storrs' note to Warren Springer fell due Warren Springer brought suit on it in the Circuit Court of Franklin county, Florida, and obtained judgment thereon, upon which an execution issued and was levied upon the tug boat Benj. L. Curtis, as the property of C. L. Storrs, and being the boat for which said Storrs purchased the machinery. Upon the levy being made Ellen F. Storrs, wife of C. L. Storrs, by her next friend, Charles Reynolds, on the fifth day of January, 1884, filed her bill in the Circuit Court of Franklin county against her husband, C. L. Storrs, and Warren Springer, alleging the obtaining of the judgment by Warren Springer against C. L. Storrs, the issuing and levying of said execution by the Sheriff of Franklin county on the steam tug B. L. Curtis as the property of C. L. Storrs, and that the same was advertised and about to be sold to satisfy the execution and judgment of Warren Springer against C. L. Storrs, and alleging farther that same steam tug was her separate property, and prayed that it be released from said levy and decreed to be her own separate property and not subject to sale under said execution. That appellants be enjoined and restrained from proceeding farther to sell said tug boat under said execution. The Judge granted an injunction and restrained the sale of said tug boat. Afterwards said Warren Springer filed his answer to said bill. Warren Springer answered that C. L.

Storrs had said tug boat constructed and equipped under contract with him, and paid for its construction and equipment partly with his own money and partly with money which he raised on his credit. That said Storrs purchased of him, Springer, the machinery of said boat, and gave his note for a balance therefor, which was merged in the judgment upon which the execution was issued and so levied; he denied that Ellen F. Storrs had any separate property in said boat, but that the same was the property of C. L. Storrs, and charged that the said C. L. Storrs and Ellen F. Storrs had combined and colluded together to delay and hinder the said Warren Springer in the collection of his said execution debt, by falsely and fraudulently claiming the said tug boat to be the separate property of Ellen F. Storrs. C. L. Storrs filed no answer to said bill, and a decree *pro confesso* was taken against him.

The complainant afterwards filed a replication to said Springer's answer, and testimony was taken touching the issues joined. Among other witnesses who were examined by complainant was her husband, C. L. Storrs. Before said cause was heard, Warren Springer moved to suppress the testimony of C. L. Storrs. The court denied the motion, and afterwards, on the 9th day of June, A. D. 1885, made a final decree in the cause, making the injunction heretofore granted perpetual, and taxing Warren Springer with the costs of the suit. From that decree the cause was brought to this court by appeal.

The appellants assigned the following errors in the proceedings of the cause, upon which they ask a reversal of the rulings of the court below:

1st. Because the bill does not contain facts sufficient to entitle the plaintiff to the relief prayed for therein.

2d. Because the Judge refused to suppress the testimony of C. L. Storrs and overruled the motion therefor.

3d. Because the testimony does not sustain the allega-
tions in the bill and establish the plaintiff's claim to the
property in controversy.

In considering the errors assigned in this cause we will
first consider the second error assigned, the refusal of the
court below to suppress the testimony of C. L. Storrs, who
is the husband of the complainant, Ellen F. Storrs. C. L.
Storrs, who was a defendant in this cause, gave evidence
in this cause by deposition, called as a witness by his wife.
The defendant, Warren Springer, moved the court to sup-
press the deposition, which was refused by the court; was
this error? The general rule clearly is that the husband
and wife cannot be witnesses for or against each other.
Greenleaf on Evidence, sections 334 to 341. This is the
rule both in England and the United States, except when
altered by statute. The reason of the rule is based not
only upon interest, but upon the nature of the marital re-
lation and on principles of public policy. Co. Lit., 66;
Tilley vs. Cowling, 1 La., Raymond, 744. This whole
question is very fully discussed and the English and
American authorities reviewed in a New York case, (Has-
brouck vs. Vandervoort, and Hayward, 5 Selden, 153, 9 N.
Y.,) and it was there held that "a husband is not a compe-
tent witness for or against the trustee of his wife's separate
estate in a suit between the trustee and a third person in
relation to the trust estate." To this general rule, exclud-
ing the husband and wife as witnesses, there are exceptions
allowed from the necessity of the case for the protection of
the wife in her life and liberty, and partly for the sake of
public justice. But the case before the court does not fall
within the exception. It is not a general necessity, as
where for instance no other witness can be had, but a par-
ticular necessity as where, for instance, the wife would

otherwise be exposed without remedy to personal injury. 1 Greenleaf on Evidence, section 343.

Have the statutes of the State of Florida altered this general rule? We think not. The case of McGill vs. McGill, 19 Fla., 341, affirms the rule in England and in New York, holding that our statutes have not varied the rule. The court below therefore erred in overruling the motion to suppress the deposition of C. L. Storrs. The deposition should be suppressed.

The first error assigned is that the bill does not contain facts sufficient to entitle the complainant to the relief prayed for in the bill. The facts as to the title of complainant to the property levied upon are very meagre and a demurrer to the bill upon this ground should have been interposed and would doubtless have been sustained. But as the bill was answered, replied to, and evidence heard upon the allegation of the bill, this court upon that ground alone would not disturb the decree of the court below.

The third error that the testimony does not sustain the allegation of the bill next invites our attention, and will be considered as if the evidence of C. L. Storrs had been suppressed. The bill does not disclose the ground upon which the steam tug B. L. Curtis is claimed to be the "separate property" of Ellen F. Storrs, the complainant, whether it is claimed as her "separate estate" under a deed or "separate statutory property," controlled by the Constitution and statutes of this State.

It was in this case incumbent on the complainant to show by evidence that the property was paid for by her and with her separate money. 5th Fla., 277, 430; 8th Fla., 136; and in the case of Fairchild et al., vs. Knight et al., 18 Fla., 772, this court affirmed the principle that the wife must allege that the property levied upon for her husband's debt was property purchased with her own means, and that she

is to be held " to full and strict proof" of a separate property in the property levied upon as the property of her husband. Unless this proof is made the property is presumed to be property of the husband. In this case complainant alleges in her bill that "the steam tug Benj. L. Curtis, levied upon for her husband's debt, is her separate property purchased with her own means, with her separate means, that her husband, C. L. Storrs, had no interest in it." The evidence clearly and unmistakably shows that the machinery for the steam tug boat, Benj. L. Curtis, was purchased by C. L. Storrs, and that complainant was not known in the transaction.

Complainant further alleges in her bill that before her marriage with C. L. Storrs she had " property " worth $1,500 to $1,800. That her husband gave her previous to their removal to Florida real estate of the value of $5,000. That Springer's debt was not contracted until after removal to Florida. That said real estate was converted into " money and other things, a portion invested in steam tug boat, Benj. L. Curtis, for her sole use and benefit and that of her children." These allegations are denied by the answer of Warren Springer, the defendant, who is seeking to enforce his execution against C. L. Storrs. This bill is sought to be sustained by the evidence of only one witness, that of Charles H. Parlin, who testifies that there was a " saw mill " at Apalachicola he "understood " belonged to Ellen F. Storrs. Does not know when or where they were married. They are husband and wife. That complainant came to Florida six years ago and brought with " them," or soon after, machinery for a steam saw mill. This machinery is now in a mill owned by Parlin & Brayton, bought by them from Ellen F. Storrs, giving notes and mortgage to her for the same. That the tug boat Benj. L. Curtis was built at Rio Carrabella, Fla. He fur-

nished the material and money to Ellen F. Storrs upon a debt for the mill machinery he and Brayton owed her for to build the hull of the tug Curtis, and a draft to Ellen F. Storrs, which he " supposed " purchased the machinery for the tug Curtis; that the tug Curtis cost, he "supposed," about $4,000.  This is the only evidence left in this case, after suppressing the deposition of C. L. Storrs, to sustain the issue that the steam tug boat Benj. L. Curtis was the separate property of Ellen F. Storrs, purchased with the separate means or money of complainant, Ellen F. Storrs.

The burden of proof upon this issue was upon the complainant, Ellen F. Storrs, and should have been sustained by at least two witnesses, or one and other corroborating evidence.   The evidence of witness Parlin is wholly unsatisfactory to sustain the issue.   It rests upon what he " understood " and "supposed," and from his transactions with Ellen F. Storrs as to some mill machinery she sold him and Brayton that he " understood " was hers.   How or why he understood the machinery was hers nowhere appears in his evidence or the record.   We are led to believe if she had a separate property of $1,500 or $1,800 when married, and that after the marriage her husband gave her $5,000 in real estate; that the marital rights of the parties to all of said property and money were governed by the laws of some other State than Florida, but what State, or what the law of that State was, nowhere appears in the bill or the proofs. We think the complainant fails to sustain her allegations in the bill that the steam tug Benj. L. Curtis is her separate property, purchased with her separate money or property.

Decree reversed and cause remanded.