### Ex Parte Margaret Beville.

1. The English decisions rendered prior to the War of the Revolution are evidence of what the common law is; but, in order to be binding here, these decisions must be clear and unequivocal.

2. At the common law neither the husband nor wife could be witnesses for or against each other, except in case of necessity as where the offense is directly against the person of the wife.

3. The common law made no distinction between the incompetency of one spouse to testify for or against the other as a matter of disability and incompetency as a matter of privilege.

4. By statutes in this State the husband and the wife are made competent and compellable witnesses for or against each other in both civil and criminal cases.

5. The change of the common law rule by making one spouse a competent witness against the other does not affect the rule against disclosure of marital communications.

6. Having given the offending party an opportunity to be heard, the court has an inherent right to punish as for a contempt, the violation of an order lawfully made to maintain its dignity, authority and efficiency in the administration of the law.

This case was decided by the court En Banc.

This is a case of Original Jurisdiction.

The facts in the case are stated in the opinion of the court.

*Thomas Palmer, J. C. B. Koonce, J. B. Johnson* and *J. H. Jones,* for Petitioner;

*Park Trammell,* Attorney General, for the State.

PARKHILL, J.—Upon petition to one of the Justices, a writ of Habeas Corpus was granted returnable before this court.

The petitioner was adjudged guilty of contempt of court by the Judge of the Fifth Judicial Circuit for refusing to obey an order of that court to testify before the

grand jury of Sumter County against her husband, who was charged with the murder of Bruno P. Harder and Francis Harder, as to matters not involving marital confidence and as to a crime not committed upon her person.

In such a case, at common law, the wife could not be a witness for or against her husband. McGill v. McGill, 19 Fla. 341; Storrs v. Storrs, 23 Fla. 274, 2 South. Rep. 368; Schnabel v. Betts, 23 Fla. 178, 1 South Rep. 692; Moore v. State, 45 Tex. Cr. 234, 2 Ann. Cas. 878, note 881;

Let us see, then, whether and to what extent this common law rule has been altered by statute here.

In 1874 the legislature enacted Chapter 1983, providing that no person offered as a witness shall be excluded by reason of his interest in the event of the proceeding or because he is a party thereto. This act has remained in force to this day, becoming known as section 24, p. 518, McClellan's Digest, then section 1095, Revised Statutes of 1892, and now known as section 1505 General Statutes of 1906. It went to the competency of *witnesses* as affected by *interest*; and, under its provisions, if a husband was a party he was not disqualified from testifying as to his own interest, even though his wife were a party, but he could not testify as to her interest if she was a party or interested in the result; and if a wife was a party interested in the result she could testify as to her own interest, but it did not extend to her any competency in excess of that given to a husband. Williams v. Jacksonville, T. & K. W. Ry. Co., 26 Fla. 533, 8 South. Rep. 446; Haworth v. Norris, 28 Fla. 763, 10 South. Rep. 18. In other words, this statute did not change or alter the common law rule of incompetency of the husband or wife to testify for or against each other, as this court decided in McGill v. McGill, 19 Fla. 341, because, as there said, this exclusion was not on the ground of pecuniary or property interest solely, but upon grounds of public policy for the

protection of the married relation; or, as it was later expressed in Everett v. State, 33 Fla. 661, text 673, the relation of husband and wife was always an additional disability to testify for or against each other in any case, and the removal of the disability of interest would not of itself permit them to testify for or against each other. So later on in 1879, in Chapter 3124, the law making power of this State provided that in the trial of civil actions in the State, *married women* shall not be excluded as witnesses in cases wherein their *husbands* are parties and allowed to testify. "The act of 1879, however," said this court, in Haworth v. Norris, *supra,* "did extend to her additional competency; it says that whenever the husband is a party and allowed to testify the wife shall not be excluded as a witness. The purpose of this act was to remove the common law disability as wife which at the time of its enactment remained unaffected by prior legislation; so wherever the husband was a party to a suit, and its character was such that his interest therein or connection with the suit would, under the act of 1874, not disqualify him from testifying as to his interest, his wife ceased by virtue of the act of 1879, to be disqualified as wife, on the ground of public policy, from testifying as to his interests. * * * The act of 1879 does not in any manner affect the competency or incompetency of the husband as a witness." The court cited Schnabel v. Betts, *supra,* where it was said, the evidence of the husband in favor of his wife was properly excluded because, while the statute authorized the wife to be a witness in a case where her husband was a party, it did not change the common law rule which denied to the husband the right to testify for or against his wife in a civil suit against her.

So, then, after this court had said that the act of 1879 did not in any manner affect the competency or incompetency of the husband as a witness, the legislature

amended that act by chapter 4029, acts of 1891, to read as follows: "That in trials of civil action in this State, neither the *husband nor the wife* shall be excluded as witnesses, where either the said husband or wife is an interested party to the suit pending;" this provision becoming known as section 1502 of the General Statutes of 1906. And this court, in Everett v. State, 33 Fla. 661, 15 South. Rep. 543, declared that "the act of 1891, Chapter 4029, removes the disability of husband and wife to testify in civil cases to an extent far beyond both the act of 1879 and the provisions of section 1094 of the Revised Statutes as adopted. They shall not be excluded under the act mentioned, as witnesses in civil actions, where *either* is an interested party to the suit pending, and the right to testify here given is not dependent upon the fact that either does testify or is allowed to testify, but where either is a party to the suit pending."

At last, after what would seem to be a patient, persistent and intelligent effort to correct the omissions and defects pointed out each time by this court in the legislation on this subject, the legislature accomplished its purpose to alter the common law rule prevailing in civil cases, whereby, upon grounds of *public policy,* not on the ground of interest in the suit, the husband and the wife could not be witnesses for or against each other.

In 1892, as section 2863 of the Revised Statutes, the legislature further enacted: "The provisions of law relating to the competency of witnesses in civil cases shall obtain also in criminal cases;" and this court, in Everett v. State, *supra,* construed these statutory provisions and said, "the rule as to competency of husband and wife to testify for or against each other in civil cases, as well as to the competency of witnesses in other civil cases, will apply also to criminal trials." "From this," the court said, "it follows that the Circuit Judge did not err in

permitting Mrs. Everett to testify in the case. It may be observed that the relation of husband and wife was always an additional disability to testify for or against each other in any case, and that the removal of the disability of interest would not of itself permit them to testify for or against each other." Mrs. Everett was the wife of the defendant who was on trial for murder, and we find on page 664 of 33 Fla., "After the testimony for the State in chief had been introduced, and the defendants had made voluntary statements in their behalf to the jury, Mrs. Ellen Everett, wife of the defendant William H. Everett, was called as a witness on the part of the *State* to testify in rebuttal of the statement made by her husband. *An objection was made by defendant* that she was not a competent witness, and this objection being overruled and exception was duly noted."

In Walker and Walker v. State, 34 Fla. 167, 16 South. Rep. 80, the third assignment of error referred to the ruling of the court excluding testimony of Phyllis Walker, offered by the defendants. They were indicted for murder. The witness, was the wife of the defendant Kenneth Walker. The *State Attorney* this time objected and the court excluded her testimony. "In so doing," said this court, speaking through the Chief Justice, "it clearly acted upon the presumption that a wife in a criminal case cannot testify for or against her husband. According to a recent decision of this court (Everett v. State, 33 Fla. 661, 15 South. Rep. 543) this was error, and she should have been permitted to testify."

In Mercer v. State, 40 Fla. 216, 24 South. Rep. 154, this court again affirmed the previous construction placed upon Chapter 4029, Acts of 1891, and § 2863 Revised Statutes, now § 3919 General Statutes, saying through the Chief Justice: "In construing these statutes and their bearing upon each other this court, in the case of Everett

v. State, 33 Fla. 661, 15 South. Rep. 543, and again in Walker v. State, 34 Fla. 167, 16 South. Rep. 80, held, in substance, that their joint effect was to abrogate the old common law rule as to the competency of witnesses that forbade either the husband or wife to testify at all in *any case,* either civil or criminal, where either of them was an interested party; that they made both the husband and wife competent witnesses to testify for or against each other in all cases, civil or criminal, where either of them was an interested party." See also, Adams v. State, 28 Fla. 511, 10 South. Rep. 106. We think these cases disposed of this proceeding in habeas corpus adversely to the petitioner herein. Such has been the holding in this State since the decision in the Everett case at the January Term of this court in 1892. This rule has prevailed here unchanged, in civil as well as criminal cases, for about fifteen years, although eight sessions of the legislature have convened within that period of time.

Although we regard this question as no longer an open one in this State, we will consider the argument made now in support of the contention that the petitioner may not be compelled to testify against her husband.

It is contended that at common law there was a privilege of husband and wife of not testifying against each other, as distinguished from the disqualification to testify for each other, and that the effect of our statute is to abolish the disqualification only and the privilege still remains. This contention finds strong support in the statement of Mr. Wigmore, in § 2227, vol. 3 of his great work on evidence, that the privilege existed before the disqualification, citing Bent v. Allot, Cary 135, decided in 1580, as the first explicit ruling, and saying that the privilege was recognized more than once in the next century. In the year of 1784, however, Lord Mansfield declared, in Bentley v. Cooke. 3 Doug. (Eng.) 322: "There

never has been an instance in a civil or criminal case where the husband or wife has been permitted to be a witness for or against each other, except in case of necessity, and that necessity is not a general necessity, as where no other witness can be had, but a particular necessity, as where, for instance the wife would otherwise be exposed without remedy to personal injury." In Windhams v. Chetwynd, 1 Burr. 424, Lord Mansfield again said: "In matter of evidence, husband and wife are considered as one, and cannot be witnesses, the one for the other."

In 1 Blackstone 443, speaking of the competency of husband and wife as witnesses at common law, the great commentator says: "In trials of any sort, they are not allowed to be evidence for or against each other; partly because it is impossible their testimony should be indifferent; but principally because of the union of the person; and therefore if they were admitted to be witnesses for each other, they would contradict one maxim of the law, *nemo in propria causa testis esse debit*; and if against each other, they would contradict another maxim, *nemo tenctur seipsum accusare*. But where the offense is directly against the person of the wife, this rule has usually been dispensed with."

And so the editors of that great work, The Ency. of Ev., vol. 6, p. 849, 850, state that the common law made no apparent distinction between the incompetency of one spouse to testify for or against the other as a matter of disability and the incompetency as a matter of privilege, citing Bentley v. Cooke, *supra*; but that many of the *statutes*, though perhaps not in so many words, do in effect make such a distinction. With these statutes and the cases arising under them we have no concern. The common law as it existed in England prior to 1776 is in force in this State by statute.

12—Vol. 58.

It may be that a few early decisions seem to recognize the privilege; but, in order to be binding upon us as evidence of what the common law is the English decisions rendered prior to the War of the Revolution must be clear and unequivocal. Myers v. Hodges, 53 Fla. 197, text 205, 44 South. Rep. 357; 6 Amer. & Eng. Ency. Law (2nd ed.) 279.

The well recognized common-law rule that neither husband nor wife could be a witness for or against each other would seem to be inconsistent with the idea that the wife's testimony on her husband's behalf is treated as receivable, while it is his privilege to keep her from testifying against him and her's to refrain from doing so. How could the common law regard the testimony of husband or wife criminating the other consort as detrimental to the public welfare, excluding such testimony as being disqualified or incompetent, and *at the same time* regard such testimony as detrimental to the parties only and exempt it as being privileged—thereby making it optional with the spouse to divulge it? Is there not a clear inconsistency in the idea that this testimony may be detrimental to the public welfare and incompetent, and the other idea that this testimony may be detrimental to the parties and privileged to be divulged? We think so.

It may be that, in the formative period of this doctrine, the testimony of husband or wife against the other was considered detrimental to the parties only and exempt as privileged. But certain it is, the common law finally came to regard such testimony as detrimental to the public welfare also, and excluded it as being incompetent and disqualified. Then the privilege disappeared or became merged in the doctrine of disqualification, giving rise to the well recognized rule of the common law, that neither husband nor wife can testify for or against the other, with certain exceptions not important here. The

privilege then, becoming merged in the doctrine of disqualification, the statute that removed the disqualification removed the privilege also.

However that may be, assuming that the common law rule of exclusion was based both upon the idea of privilege and the idea of disqualification also, and that it were possible for them to travel together, it is perfectly clear that both the privilege and the disqualification have been abolished in this State by statute.

We must consider how this has been brought about in civil cases, for section 3919 of the General Statutes provides: "The provisions of law relating to the competency of witnesses and evidence in civil cases shall obtain also in criminal cases, except in cases otherwise provided by law."

The statute removing interest as a disqualification does not remove the objections on the ground of public policy to a wife's testifying against her husband when he is a party, as we have seen in Haworth v. Norris, *supra,* and Everett v. State, *supra.* The provisions of Chapter 4029, Acts of 1891, section 1502, General Statutes of 1906, however, go to the objections to a spouse testifying for or against the other on the ground of public policy, and abolish both the privilege, if it existed, and the disqualification of the husband and wife to testify for or against the other in the following words: "That in trials of civil actions in this State, neither the husband nor the wife shall be excluded as witnesses, where either the said husband or wife is an interested party to the suit pending."

Why was the word "excluded" used by the lawmakers in the enactment of this statute? Clearly, it was because that word appears in the statement of the common-law rule thus: "The common law *excluded* the husband and wife as witnesses in any case, civil or criminal, in which either was a party." And so, when the Legislature deter-

mined to change this common-law rule in civil cases, it
provided: "That in trials of civil actions in this State,
neither the husband nor the wife shall be *excluded* as
witnesses, where either the said husband or wife is an
interested party to the suit pending."

Next, what is the meaning of the word "excluded," or
what does the statute mean by providing that neither the
husband nor the wife shall be excluded as witnesses?

Assuming that, at common law, in addition to the *dis-
qualification* of husband and wife to testify for each other,
their testimony against each other was privileged, the
effect of this statute upon the disqualification or privilege
of husband and wife as witnesses in civil cases would be
this: Suppose in a civil suit against the husband the wife
to be called as a witness *for* her husband. If the plain-
tiff object on the ground that at common law she was
disqualified and excluded, the statute answers that she
cannot now be excluded, and the wife is permitted to
testify. If, on the other hand, the wife is called as a wit-
ness *against* her husband, and *he* and *she* object and ask
that she be excluded as a witness because at common law
it was her privilege not to testify against her husband,
the statute again answers that she cannot be excluded
on that ground, there being nothing in the statute to re-
strict the exclusion on any particular ground, and, under
our compulsory process for witnesses, she may be com-
pelled to testify against her husband. In other words,
our statute applies both to the privilege if there be one,
and to the disqualification, because it provides broadly
that neither the husband nor the wife shall be excluded
as witnesses. It does not provide that neither the hus-
band nor the wife shall be *disqualified* as witnesses. It
is not thus directed at the disqualification of husband
and wife as distinguished from a privilege; and the effect
of the statute is not to exclude husband and wife *as wit-*

*nesses* upon any ground, whether called privilege or disqualification, but it places them upon the same footing as other witnesses; and, as the provisions of law relative to the competency of witnesses and evidence in civil cases are made to obtain also in criminal cases, (§3919, General Statutes,) the husband and wife may testify and may be compelled to testify for or against the other, in criminal and civil cases, to any fact the knowledge of which was acquired by them independently of their marriage relation. Mercer v. State, 40 Fla. 216, 24 South. Rep. 154, S. C. 74 Am. St. Rep. 135; case note, State v. Woodrow, 2 L. R. A. (U. S.) 862; 3 Wigmore on Ev. § 2245, p. 3067.

The disqualification or privilege, so called, of husband and wife as witnesses at common law must not be confounded with the doctrine of confidential or marital communications. Our statute is aimed at objections to husband and wife *as witnesses*—not to the *matter* of their testimony; and the change of the common-law rule by making one spouse a competent witness against the other does not affect the rule against disclosure of marital communications. 10 Ency. of Ev. p. 168; Gee v. Scott, 48 Tex. 510, 26 Am. Rep. 331; Robinson v. Chadwick, 22 Oh. St. 527; Wigmore, Ev. § 2334, (2).

The progress of legislation on this subject in New Hampshire and the judicial construction thereof will be found very much in point.

In Clements v. Marston, 52 N. H. 21, text 36, the court said: "At common law, a party to a cause could not testify, on the ground that he was interested. Any person not a party, if interested in the result of the suit, was excluded as a witness on the ground of interest. Wives were excluded,—1st, on the ground of interest, they being interested wherever their husband were; and 2nd, upon the ground of public policy, that it was not expedient to place husband and wife in a position that might lead

to dissensions and strife between them, or that might encourage perjury. Hence, wives were not allowed to testify for or against their husbands when they were parties to civil proceedings, and for the same reason, both were excluded when either was a party in a criminal case." Then, pointing out the first inroad made upon this system in the State, the court traces the legislative changes therein, saying that "in the acts of 1869, Chapter 23, respondents were *allowed* to testify; by the act of 1871, Chapter 38, the disqualification of infamy is removed, and the wife is made a *competent* witness in all criminal cases where the respondent is allowed to testify; and this act is applied to pending suits, and made to take effect from its passage. In criminal cases, then, it would seem that the wife is made a *competent* witness in all cases; for it is not in those cases where the husband, being respondent, requests or elects to testify, that she is made *competent,* but in all cases where he is allowed to testify —which, by the act of 1869, is in all cases; and the wife being made a *competent* witness in all criminal cases, she may be called to testify for or against her husband in all cases where he is accused of crime.

"Thus it appears that the present policy of our legislation on this subject is to make the husband and wife competent witnesses for or against each other, just as though they were strangers, in no way connected, except in the single case where the court can see that such testimony would lead to a violation of marital confidence. Applying that principle, and there would seem to be no good reason why the wife should not have testified in the case before us.

"They are to be *allowed* or *compelled* to testify for or against each other in all cases, just like persons in no way related to each other, with this single exception; and this violation of marital confidence must be something con-

fided by one to the other, simply and specially as husband
or wife, and not what would be communicated to any
other person under the same circumstances."

The case of State v. McCord, 8 Kan. 232, is instructive.
There the defendant was indicted for murder, and the
court, speaking through Kingman, C. J., said: "On the
trial Sarah McCord, the wife of appellant was offered as
a witness on the part of the State, and avowed her will-
ingness to testify on the trial. The appellant objected
to her as an incompetent witness. The objection was
overruled, and the witness permitted to testify. The
propriety of this ruling must be determined by the late
statute on this subject. Laws 1871, p. 280, Ch. 118, § 1.
This section provides that no person shall be incompetent
to testify in a criminal case 'by reason of being the hus-
band or wife of the accused,' and contains this provision,
'That no person on trial or examination, nor wife or hus-
band of such person, shall be *acquired* to testify except as
a witness on behalf of the person on trial or examination.'

"The body of the section makes the husband or wife of
the accused a competent witness in all cases. The pro-
viso is a limitation, not on the competency of the witness,
but on the power of the court to compel such witness to
testify. When by the body of the section the witness was
made competent, then if that stood alone all the measures
that the law gives to courts could be resorted to to en-
force the witness to testify. By the proviso, this power
is limited; and this is all the proviso attempts to
do * * * *.

"The sanctity and inviolability of the marriage relation
is appealed to, and to preserve them, the court is urged
to give the statute a construction which we have seen it
will not bear. The argument is one addressed more prop-
erly to the legislature than the court. If the law is open
to the objections urged, it should be repealed; but this

should be done by the legislature, and not by judicial construction." Remembering that our statute does not contain the proviso to be found in the Kansas statute, the applicability of the court's holding is apparent.

It follows that the order whereby the petitioner was required to testify herein was a lawful one, and that the court may resort to all measures given by the law to compel obedience thereto. Having given petitioner an opportunity to be heard, the court had the inherent right to punish, as for a contempt, a violation of its order to maintain its dignity, authority and efficiency in the proper administration of the law. Ex parte Edwards, 11 Fla. 174; Ex parte Ed. Senior, Jr., 37 Fla. 1, 19 South. Rep. 652, S. C. 32 L. R. A. 133.

The petitioner will be remanded to the custody of the Sheriff of Sumter County.

Order to be entered accordingly.

TAYLOR, COCKRELL and HOCKER, JJ., concur.

WHITFIELD, C. J., dissenting.

The petitioner was adjudged guilty of contempt of court by the Judge of the Fifth Judicial Circuit of Florida for refusing to obey an order of the court to in effect testify against her husband by testifying for the State before the grand jury of Sumter county in a proceeding wherein her husband was accused of a crime not affecting her personally. On habeas corpus she contends that the judgment and commitment are totally illegal because it is her lawful right to refuse to testify criminating her husband in a judicial proceeding.

The right to punish as a contempt of court a violation

of a lawful judicial order is inherent in courts of justice to preserve their dignity and usefulness in administering the law. When a court has jurisdiction and has given a party charged with contempt an opportunity to be heard, and the act charged is such that it may be a violation of the lawful order of the court, a judgment imposing a reasonable fine or imprisonment for the contempt will not in general be reviewed by an appellate court for mere errors of procedure, at least in the absence of controlling statutes upon the subject. See Ex Parte Edwards, 11 Fla. 174; Caro v. Maxwell, Judge, 20 Fla. 17; Sanchez v. Sanchez, 21 Fla. 346; Palmer v. Palmer, 28 Fla. 295, 9 South. Rep. 657; Florida Cent. & P. R. Co., v. Williams, 45 Fla. 295, 33 South. Rep. 991; Ex Parte Robinson, 19 Wall. (U. S.) 505; Hurley v. Commonwealth, 188 Mass. 443, 74 N. E. Rep. 677, 3 Am. & Eng. Anno. Cas. 757, and notes; State ex rel. Chicago, B. & Q. R. Co., v. Bland, 189 Mo. 197, 88 S. W. Rep. 28, 3 Am. & Eng. Anno. Cas. 1044; Menuez v. Grimes Candy Co., 77 Ohio St. 386, 83 N. E. Rep. 82, 11 Am. & Eng. Anno. Cas. 1037 and notes; Ex Parte Tillinghast, 4 Pet. (U. S.) 108; Ex Parte Fisk, 113 U. S. 713, 5 Sup. Ct. Rep. 724.

Where a person has been committed to the custody of an officer for contempt of court in violating an order of court, such person may by *habeas corpus* secure a determination as to the jurisdiction of the court in ordering the commitment and also as to whether the conduct charged constituted delinquency or misbehavior. If it be adjudged that the court had no Jurisdiction or that the conduct was not such as may constitute a contempt of court or that it was the exercise of a legal right, and that the order of commitment is not merely erroneous or irregular, but is illegal or made without authority of law, the person will be entitled to a discharge from custody in order to make effective the judicial determination

of innocence and to preserve the constitutional right of all persons not to be deprived of liberty without due process of law. See Ex Parte Ed. Senior Jr., 37 Fla. 1, 19 South. Rep. 652, 32 L. R. A. 133; Bronk v. State, 43 Fla. 461, 31 South. Rep. 248, 99 Am. St. Rep. 119. See also Jackson v. State, 33 Fla. 620, 15 South. Rep. 250; State v. Lewis, 55 Fla. 570, 46 South. Rep. 630; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Ex Parte Knight, 52 Fla. 144, 41 South. Rep. 786; Ex Parte Fisk, 113 U. S. 713, 5 Sup. Ct. Rep. 724.

As shown by the record the purpose of the order of the court which the petitioner declined to obey, was not to require her to become a witness in the case, or to testify *for* her husband as to matters not involving marital confidence, or to testify against her husband on a charge that he had committed a crime upon her person. The purpose of the order of the court was to compel the petitioner to testify *against* her husband on an accusation that he has committed a crime upon another person. There is no contention that the wife may not be compelled to testify for or against her husband when the testimony does not incriminate him.

The Petitioner refused to testify against her husband before the grand jury upon the ground that it was her right to so refuse. Even if under the statutes of this State she is not disqualified to testify in the case and is therefore a competent witness to give testimony that is not incompetent or privileged, yet if it is her *privilege* to refuse to testify against her husband when he is charged with a crime upon another person and it does not appear that he has waived the privilege, such refusal is but an assertion of the privilege which is her right; and if it does not appear that the circumstances of this case are such that the law renders her testimony criminating her husband competent and not privileged, the order com-

mitting the petitioner for refusing to testify against her husband without authority of law, and the petitioner is entitled to be discharged. The husband against whom the order of the court required the wife to testify is not accused of crime upon the person of the wife. The refusal negatives waiver on the part of the wife, and a waiver on the part of the husband is not shown even if in view of the interest of the public in the exclusion of testimony by the wife against the husband, the privilege can be waived by either or both parties.

At common law all persons were in general disqualified to testify in judicial proceedings in which they were parties or were interested, largely upon the theory that interested testimony is, in general, not reliable, and that temptation to perjury should be avoided, therefore as a matter of public policy parties to the action and those interested therein were not permitted to testify as witnesses in cases. And the husband or wife was likewise disqualified to testify in cases where the other consort was a party or interested, chiefly perhaps on the ground of unity of interest, the husband and wife being in law regarded as one person. Whether husband and wife are civilly one or not, each has a substantial interest in common with the other. The disqualifications of all persons as witnesses where they are parties or are interested, and of husband and wife where the other spouse is a party or interested, have been modified by statutes. See Sections 1502, 1505, 3919 General Statutes of 1906.

In addition to the disqualification of the husband and wife to testify because of interest or unity of interest, the testimony of husband and wife criminating each other was by the common law privileged as being primarily detrimental to the parties; and such testimony was also excluded as incompetent since it was regarded as detrimental to the public welfare because it would impair

marital unity and harmony and because of the natural repugnance to unseemly conflicts between husband and wife. See Kent's Com. 179; Wigmore's Ev. § 2227 *et seq.* That a privilege existed at common law as to criminating consort testimony. See 1 Brownlow & Goldesborough's 47; Pedley v. Wellesley, 3 C. & P. 557; Wigmore's Ev. § 2227 *et seq.*; State v. Kodat, 158 Mo. 125, 59 S. W. Rep. 73, 51 L. R. A. 509; Wharton's Cr. Ev. §§ 396, 402, 463; State v. Briggs, 9 R. I. 361; 3 Taylor's Ev. § 1369, 1453; Rex v. All Saints, 6 M. & S. 194; State v. Woodrow, 58 W. Va. 527, 52 S. E. Rep. 545, 2 L. R. A. (N. S.) 862, and notes, 6 Am. & Eng. Anno. Cas. 180; Wharton's Ev. § 425; Cartwright v. Green, 8 Ves. Jr. 405a; Phillips on Ev. (4th Am. Ed.) p. 80.

In 1 Blackstone's Commentaries 443, in stating the common law of England as to the relation of husband and wife it is said: "In trials of any sort, they are not allowed to be evidence for or against each other; partly because it is impossible their testimony should be indifferent; but principally because of the union of the person; and therefore if they were admitted to be witnesses *for* each other, they would contradict one maxim of the law, *nemo in propria causa testis esse debit*; and if *against* each other, they would contradict another maxim, *nemo tenetur seipsum accusare.* But where the offense is directly against the person of the wife, this rule has usually been dispensed with."

The principle of the maxim above given that "No man shall be compelled to criminate himself," is also expressed in the statement of the law that "a man is *competent* to prove his own crime, though not compellable." Undal v. Walton, 14 M. & W. 255. Upon the theory that at the common law the husband and wife are civilly one, and that in the interest of the general public welfare the exemption from self accusation could be ex-

tended to the wife as being in law one with the husband, the provision of section IX of the Declaration of Rights in the State Constitution that "No person shall be * * * compelled in any criminal case to be a witness against herself," may be regarded as at least a declaration of a public policy that would preserve the privilege of not testifying against each other in criminal prosecutions accorded to the husband and wife at common law.

Where the law permits testimony to be withheld because it is detrimental to the public welfare, the testimony is excluded as being incompetent. Where the law permits testimony to be withheld because it is detrimental to the parties, the testimony is exempted as being privileged. Interested testimony is not ordinarily detrimental to the parties to an action; but as it gives opportunity for perjury, the common law regarded it as detrimental to the public welfare and excluded it as being incompetent. Testimony of the husband or wife criminating the other consort or divulging marital confidences is directly detrimental to the parties primarily, and the common law exempted it as being privileged.

The common law also regarded the testimony of husband or wife criminating the other consort or revealing marital confidences as detrimental to the public welfare and excluded such testimony as being incompetent. See 1 Greenleaf on Ev. § 340.

To abrogate a rule excluding testimony because incompetent, does not affect a rule exempting the same testimony because it is privileged, in the absence of such an intent expressed or implied. The purpose of the statutes modifying the common law rules as to testimony of parties to a suit and those interested in the event of the suit and the husband or wife of such parties or persons is to remove the rule excluding as being incompetent testimony that was regarded as detrimental to the public

welfare; and there is no expressed or implied purpose to abrogate the rule of the common law exempting as privileged testimony of the husband or wife directly incriminating the other consort or disclosing marital confidences, though the same character of testimony was also excluded as incompetent at common law.

In the case of Mercer v. State, 40 Fla. 216, 24 South. Rep. 154, 74 Am. St. Rep. 135, it was held the statutes that are now sections 1502 and 3919 General Statutes of 1906, "removed the *incompetency as witnesses* of husband and wife because of the interest of either in both civil and criminal cases, do not have the effect of empowering either of them, when they become witnesses, to give illegal or *incompetent testimony* by detailing or exposing those confidential transactions or communications that have passed between them in consequence of their marriage relation, that the law privileges and shields from exposure by either of the parties to the communication; and this to preserve a wholesome public policy." This decision is in line with the authorities and is correct in principle.

If the statutes of this State removing the disqualifications of husband or wife to testify in cases where the other spouse is a party or is interested does not remove the common law privilege as to confidential communications between husband and wife that exist only because of the marital relation, it is not perceived how they remove other common law privileges that exist solely because of the marriage relation and are also founded upon a sound public policy. If at common law there was a privilege accorded to the husband and wife of not being forced to directly accuse the other consort of crime, that privilege related to the testimony to be given and was for the benefit of the accused and of the marital relation in the interest of the general welfare. It is true testi-

mony against the consort accused of crime may not be confined to confidential communications between the husband and wife, but if there is a basis in public welfare for the sacredness of confidential communications between husband and wife there is a basis of equal if not superior merit for the privilege that each consort had at common law of not being forced to accuse the other spouse of a criminal offense. .

Experience has shown that for practical purposes in the administration of justice, the truthfulness of interested testimony may in general be sufficiently tested by cross examination and impeachment of witnesses; and the *disqualification* of persons to testify in cases because of being parties or because of interest therein or because the husband or wife is a party or interested therein have been removed or modified by statutes in this State. Neither cross-examination nor impeachment nor any other expedient now known can avoid the evil consequences of a husband or wife testifying *against* the other consort in criminal cases; and whether the rule is called a disqualification or a privilege, the legislature has shown no intent to change it. The modifying statutes specifically refer to the disqualification and exclusion of persons as witnesses because of interest, and though the exclusion as witnesses is modified, the language used is not broad enough to abrogate the privilege *of the testimony* of husband or wife *against* the other spouse allowed by law as a privilege against self accusation and exposure of marital confidences or to prevent the exclusion of such testimony as being inadmissible on grounds affecting not interest or mere public policy but the public welfare.

It is stated that the *privilege* against adverse testimony of the consort antedated the rule *excluding* such adverse testimony in the ancient common law. If the rule as to incompetency and absolute exclusion of adverse marital

testimony had the effect to supersede and render somewhat obsolete the rule of marital privilege of exemption from consort accusation, yet if the rule as to incompetency and exclusion is modified by statute, the privilege remains unless a contrary legislative intent clearly appears. Wigmore's Ev. § 2245.

The testimony of husband and wife *against* each other is competent and not privileged when necessary to protect one from the other's wrongdoing, or when justice demands it. See Lord Audley Trial, 3 St. Tr. 401, 414; Storrs v. Storrs, 23 Fla. 274, text 277, 2 South. Rep. 368; McGill v. McGill, 19 Fla. 341; Bassett v. United States, 137 U. S. 496, 11 Sup. Ct. Rep. 165; 1 Greenleaf on Ev. 343; Wigmore on Ev. § 2239; Schouler on Husband and Wife § 84; Turner v. State, 60 Miss. 351; Johnson v. State, 94 Ala. 53, 10 South. Rep. 427; State v. Davidson, 77 N. C. 522; Whipp v. State, 34 Oh. St. 87, S. C. 32 Am. Rep. 359; State v. Harris, 5 Pen. (Del.) 145, 58 Atl. Rep. 1042; Bishop's New Crim. Proc. § 1153; 2 L. R. A. (N. S.) 862, and notes; Chamberlayne's Best on Ev. §§ 175, 176; A. & E. Anno. Cas. 881 and notes.

The principles above stated are mere rules of evidence formulated by the courts for the administration of justice. In establishing and enforcing rules of procedure the courts are guided by the experiences of the past, and have regard for public policy and the general welfare as well as for the rights of individuals. Public policy and rules of procedure may be determined and established by the law making power acting within its authority. Legislative enactments are presumed to be for the general public good. There is no vested right or interest in any mere rule of judicial procedure existing at common law or otherwise provided. Rules of evidence relate to judicial procedure, and are subject to legislative action within constitutional limitations securing private rights. See

Stearns & Culver Lumber ʻCo. v. Fowler, decided at this Term, McGehee Due Process of Law, 180 *et seq.* and authorities cited; Campbell et al. v. Skinner Mfg. Co., 53 Fla. 632.

Experience has demonstrated the wisdom of the rules respecting the testimony of husband and wife *against* each other that are so firmly embedded in and safely guarded by that great protector of human rights, known as the English Common Law, which is the law of this State except where it has been expressly or impliedly abrogated or modified by the law making power. Section 59 General Statutes of 1906.

The statutes of this State provide that: "No person in any court or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto," with an exception not pertinent here. Sec. 1505, (Acts of 1874.)

"In the trial of Civil actions in this State neither the husband nor the wife shall be excluded as witnesses where either the said husband or wife is an interested party to the suit pending." Sec. 1502. (Act of 1891.) "The provisions of law relative to the competency of witnesses and evidence in-civil cases shall obtain also in criminal cases, except in cases otherwise provided by law." Sec. 3919 General Statutes of 1906.

If it be conceded that the above statutes completely remove *all disqualifications* of husband or wife as witnesses, thereby making *them competent to testify*, the statutes do not remove the privilege or authorize the giving of *incompetent testimony* as recognized by the rules of the common law. Mercer v. State, *supra.* It would seem however, that the above statutes only remove such disqualifications as depended upon interest; and whether the exemption from adverse testimony of husband or wife

13—Vol. 58.

is regard as a disqualification or as a privilege, such exemption is not affected by the statutes but it remains as at common law. In the cases of Everett v. State, 33 Fla. 661, 15 South. Rep. 543, and Walker v. State, 34 Fla. 167, 16 South. Rep. 80, 43 Am. St. Rep. 186, the objection was not specifically upon the ground that the wife was privileged not to testify against her husband. In neither case was the privilege claimed as such. The precise point presented here does not appear to have been considered by this court in any other case.

Where statutes modify the rules of the common law disqualifying witnesses on account of interest or identity of interest, such statutes do not affect the rules of law relating to incompetent testimony or to privileged testimony, unless an intent to do so clearly appears. See Underhill's Crim. Ev. § 185; Wigmore on Ev. § 2245; Mercer v. State, supra.

The common law rules giving to husband and wife the privilege of not testifying against each other in judicial proceedings and rendering such testimony incompetent in the interest of the public, being based upon considerations involving the welfare of human society, legislative enactments modifying the rules should be so clear and explicit as to prevent reasonable doubt as to the intent and as to the limits of the change. Barnett v. United States, 137 U. S. 496, 11 Sup. Ct. Rep. 165; Underhill's Crim. Ev., § 185; Byrd v. State, 57 Miss. 243; Lucas v. Brooks, 18 Wall. (U. S.) 436, text 453; State v. Willis, 119 Mo. 485, 24 S. W. Rep. 1008.

The purpose of the above statutes was to remove the disqualifications of witnesses to testify. As the statutes are in derogation of the common law and are enabling in their nature, they should not be extended further than is warranted by a fair consideration of their terms, taken in the light of the object desired to be accomplished. See

Hainlin v. Budge, 56 Fla. 342, 47 South. Rep. 825; Bryan v. Dennis, 4 Fla. 445; Morrison v. McKinnon, 12 Fla. 552; New York, People of State of *ex rel.* Metropolitan St. R. Co. v. New York State Board of Tax Com'rs, 199 U. S. 1, 25 Sup. Ct. Rep. 705; Williams v. Jacksonville, T. & K. W. Ry. Co., 26 Fla. 533, 8 South. Rep. 446; Jacksonville Electric Co. v. Bowden, 54 Fla. 461, 45 South. Rep. 755, 15 L. R. A. (N. S.) 451; 30 Am. & Eng. Ency. Law (2nd ed.) 958.

The petitioner being a wife, has the privilege accorded to her at common law and not taken from her by statute, of not testifying *against* her husband when charged with a crime upon the person of another. This privilege is a legal right given for the benefit of the parties and of the marriage relation and for the public good; and even if, in view of the public interest in the exclusion of such testimony, the law permits the privilege to be waived, it is a right that may be asserted and should be regarded as sacred. In refusing to obey the order of the court to testify for the State in a prosecution of her husband for a crime not upon her person, she in my judgment merely asserted a legal right, and by doing so did not violate, but observed the law.

SHACKLEFORD, J., concurs in this dissent.